ALLIGATOR COMPANY and David Crystal, Inc.

v.

ROBERT BRUCE, INC. and Robert Bruce Sales Company, Inc.

Civ. A. No. 25988.

United States District Court
E. D. Pennsylvania.

July 10, 1959.

Arthur H. Seidel, Philadelphia, Pa., for plaintiff.

Harry Langsam, Spiegel & Highley, Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

These are motions by the defendants to dismiss and for summary judgment.

It appears from the complaint that The Alligator Company has been engaged since 1908 in the manufacture and sale of clothing, principally coats and raincoats. It is the owner of two registered trademarks, one of 1909 consisting of a picture of an alligator together with the words "Alligator Brand" in block capitals and the other, registered in 1929, consisting of the word "Alligator", in script. The latter is registered for various garments including "work shirts". There is nothing before the Court to indicate that The Alligator Company is or has been manufacturing shirts.

The plaintiff Crystal has been since October 1951 the sole distributor in this country for a rather widely known type of sport shirt manufactured in France and called the "Lacoste" shirt—a garment bearing an emblem embroidered on the breast and appearing also on the neck band and hang-tag, consisting of the representation of a scaly reptile which is intended for a crocodile but could just as well be an alligator. It further appears that in September 1958 The Alligator Company granted to Crystal the right to use the word "crocodile" and "the pictorial representations of a lizard-like reptile" in connection with the latter's sale of the Lacoste shirt as well as a number of other articles of men's clothing specified in the license.

It is not at the present time disputed that the defendants are selling shirts advertised as "Alligator" shirts and bearing labels affixed to the breasts thereof consisting of the representation of an alligator or crocodile. The main question raised by these motions, and the only one which requires discussion, arises from the defendants' contention that, inasmuch as The Alligator Company has given Crystal the right to use its trademarks in connection with the sale of goods not manufactured by The Alligator Company, the trademarks no longer identify the goods with the maker, have lost their significance as an indication of origin and, consequently, must be held to have been abandoned.

Section 45 of the Lanham Act, 15 U.S. C.A. § 1127, provides "A mark shall be deemed to be 'abandoned'—* * * (b) When any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin." However, Section 5 of that Act, 15 U.S.C.A. § 1055, provides "Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public." and Section 45 further provides "The term 'related company' means any person who legitimately controls or is controlled by the registrant or applicant for registration in respect to the nature and quality of the goods or services in connection with which the mark is used."

The sole question, therefore, in the present case is whether Crystal is "related" to The Alligator Company within the meaning of the Act.

Alligator's license agreement with Crystal has been brought before the Court by affidavit and a study of it, particularly Section 2(b) and (c), shows that Crystal agrees to maintain the quality of its trademarked product in "the

same relative quality position in the apparel market" as samples submitted with the agreement. An adequate system of inspection is provided for by which Alligator is in a position to learn at any time whether such quality is being maintained and, upon a determination that it is not, to terminate the agreement.

██ This, it seems to me, constitutes Crystal, on paper at least, a related company within the meaning of the statute. However, I do not think that the issue is one which can be decided for either party on a motion to dismiss or for summary judgment. The mere fact that one company has the legal right to control the quality of the goods sold under the trademark is not finally and conclusively determinative of the question whether the companies are "related". The statute does not refer to a person whom the registrant has the *right to control*. The language is "any person who * * * *is controlled* by the registrant". What the parties actually do in carrying out the agreement is necessarily a question of fact and presents an issue which precludes the entry of judgment at this time.

██ The defendants cite an opinion of the Commissioner of Patents in Ex parte C. B. Donald Co., 117 U.S.P.Q. 485. That case is distinguishable upon its facts in that it deals with an application for registration by a person, admittedly not the owner of the mark nor the manufacturer of the goods. The Commissioner at the beginning of his opinion states that Section 5 of the Lanham Act was not intended to create any new rights, something which it would be doing if interpreted to give a right of registration to one who does not own the mark, has never used it or made the goods. It is pointed out that Section 5 recognizes the rights of the *owner* of a mark but does not create any right of ownership which did not theretofore exist. If, in view of some language in the latter part of the opinion, the Commissioner is to be understood as denying the right of a trademark owner to license a related company to use the mark, it seems to me that such

statement would be in direct conflict with the Act and would have to be disregarded. Section 5 of the Lanham Act by expressly excepting cases where an element of deceit is involved impliedly recognizes that, if goods sold under a trademark have to be in conformity with the trademark owner's standards of quality, there is no deception of the public.

The defendants' motions are denied.