**FRED HARVEY, a corporation, Plaintiff,**

v.

**HARVEY HOUSE, INCORPORATED and Hampshire Square, Inc., Defendants.**

**No. 33187.**

United States District Court
E. D. Pennsylvania.

Jan. 11, 1968.

———◇———

Jerome Gilson, Dean A. Olds, E. S. Berger, and Hume, Clement, Hume & Lee, Chicago, Ill., and Eugene Chovanes and Jackson, Jackson & Chovanes, Philadelphia, Pa., for plaintiff.

Paul A. Levy, Edward L. Frater, and Frater, Green & Levy, Philadelphia, Pa., for defendants.

## OPINION

RUSSELL E. SMITH, District Judge.

In this action for unfair competition the court in separate findings has determined that the terms "Harvey House", "Harvey Girls" and "Fred Harvey" are trade names owned by the plaintiff. The terms "Harvey House" and "Harvey Girls" became a part of the common speech in the Southwest when Fred Harvey opened eating houses along the lines of the Santa Fe railroad in the latter part of the Nineteenth Century. At meal time the trains stopped—the train passengers debarked—dined and reboarded the train. Fred Harvey did play a part in the development of the Southwest and the names associated with him were a part of American history. As such they have been publicized in fiction and nonfiction, over the radio, in motion pictures and on television. The terms have been advertised by the plaintiff not only in areas it serves, but nationally as well. While most of the station eating houses had been closed by 1945, the memory of them lingered and the names were, in 1945, and now are, extremely valuable as trade names.

Late in the year 1945 Harvey Lockman opened a restaurant in Philadelphia, using the name "Harvey House". At that time the plaintiff was operating restaurants in the railroad terminals in Chicago, Kansas City, Cleveland, and

St. Louis. It also operated non-railroad connected restaurants in a few other towns between Chicago and the West Coast; concession facilities in Grand Canyon National Park; and the diner service on the Santa Fe railroad. The restaurants had specific names such as El Tovar, Bright Angel and La Fonda, and none of the restaurants were designated by the name "Harvey House" or "The Harvey House." However, as the Fred Harvey-operated eating houses in the railroad depots had been known in the common speech as Harvey Houses, so these specifically named restaurants were known locally as Harvey houses. By 1945 the plaintiff had adopted the term "Harvey House" as a collective name for all of its specifically named units, and the term had been advertised nationally as such.[1]

The Court has found that the proof does not show that Harvey Lockman knew of the plaintiff's use of the term "Harvey House" when he opened his restaurant in 1945, although it did show that Lockman knew of the use of the terms "Fred Harvey" and "Harvey Girls". Plaintiff and defendant are not competitors, and except as it may affect the stature [2] of plaintiff's trade name, defendant's use of the words "Harvey House" will not cause any actual damage to plaintiff. As of 1945 nothing indicates that the plaintiff had any plans to expand its restaurant activities to areas east of Cleveland in the then reasonably near future.

A great many people in the Southwest do associate the words "Harvey House" and "Harvey Girls" with the plaintiff, as do a great many people who have traveled through the Southwest. By virtue of the publicity some people who have neither lived in nor traveled through the Southwest make the same association. Some who do make that association live in, or will visit, Philadelphia, and some of them will confuse defendant's restaurant with plaintiff's operations. Under these circumstances should an injunction issue?

■ Where the problem of unfair competition arises in connection with restaurants, motels and hotels, the senior user has been almost uniformly protected. The cases which are collected in Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, n. 6, (7th Cir. 1965) are authority for the proposition that it is not necessary that there be an actual competition between the juror and senior user, nor that there be any intent on the part of the senior user to enter the geographical market of the junior user. There is some confusion as to the necessity for a finding that the junior user had notice of the senior user's prior use. This confusion seems to be complicated by the concurrent market concept. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); Restatement, Torts § 717(1) (b) (ii) (1938). In *Hanover Milling* the court said that a trade name would not be protected in a remote market "unless at least it appear that the second adopter has selected the mark with some design inimical to the interests of the first user * * *." 240 U.S. at 415, 36 S.Ct. at 361. In Pike v. Ruby Foo's Den, 232 F.2d 683 (D.C. Cir. 1956) the court, finding in favor of the senior user and noting an article in 68 Harvard Law Review, 814, 858 (1955) distinguishes the decisions in *Rectanus* and *Hanover Milling Co.* on the ground that in those cases the junior user was unaware of the senior user. The same distinction is made in White Tower System v. White Castle System, etc., 90 F.2d 67 (6th Cir. 1937) cert. den. 302 U.S. 720, 58 S.Ct. 41, 82 L.Ed. 556 (1937),

---

1. In 1951 plaintiff started using the term "Harvey House" as a specific name and now has eleven restaurants by that name.

2. Judge Learned Hand's oft quoted language in Yale Electric Corporation v. Robertson, 26 F.2d 972 (2d Cir. 1928), indicates that this is sufficient to warrant injunctive relief.

and El Chico, Inc. v. El Chico Cafe, 214 F.2d 721 (5th Cir. 1954).

In light of the finding that the defendant had no knowledge of the prior use of the words "Harvey House" as of 1945, and the fact that plaintiff had not established restaurants east of Cleveland, and had no plans of doing so, is this case governed by *Rectanus* and *Hanover Milling*? Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3rd Cir. 1958), and Thompson v. Alpine Motor Lodge, Inc., 296 F.2d 497 (5th Cir. 1961) stand for the proposition that a knowledge of the senior user at the time of the adoption of the name by the junior user is not necessary. For the reasons hereafter stated these decisions are not in conflict with *Rectanus* and *Hanover Milling*.

It seems clear from both *Rectanus* and *Hanover Milling* that where a senior user has entered a market, the intent or lack of intent on the part of the junior user is not important. In both of these cases the goods of the senior user had not moved into the area of the junior user's trade and the junior user was given protection. That would be true here except that a market in terms of a Stork Club, a Pump Room, or an Alpine Motor Lodge is not the same as a market for flour or dyspepsia cures. For the most part flour or medicine to be sold must move into the area where the consumer lives—not so with restaurant or hotel services. In the case of a restaurant such as the Stork Club, a market has been appropriated to the extent that it can be, when the prospective traveler wherever he may be becomes aware of and interested in the Stork Club. When a Stork Club or a Pump Room or a motel advertises nationally it seeks to attract the peripatetic public to its door. In this context geographical remoteness is not relevant. When by one means or another a restaurant name has been advertised so that it is known to a significant segment of the traveling public, then the owner of that name seeking the trade of the traveling public is protected against a good faith junior user. For these reasons the court is of the opinion

that Ambassador East, Inc. v. Orsatti, Inc. and Thompson v. Alpine Motor Lodge, Inc., are not in conflict with *Rectanus* and *Hanover Milling*.

The injunction will issue in accordance with the Court's Findings of Fact and Conclusions of Law.