**MATADOR MOTOR INNS, INC.,**
Plaintiff,

v.

**MATADOR MOTEL, INC., Defendant.**

Civ. No. 478–73.

United States District Court,
D. New Jersey.

June 6, 1974.

Capehart & Scatchard, by Thomas H. Morgan, Camden, N. J., Newton, Hopkins & Ormsby, by George M. Hopkins, Atlanta, Ga., for plaintiff.

Archer, Greiner & Read, by Robert G. Harbeson, Haddonfield, N. J., Howson & Howson, by Charles M. Allen and Lewis F. Gould, Jr., Philadelphia, Pa., for defendant.

## OPINION

### On Cross Motions for Summary Judgment

COHEN, Chief Judge:

What's a Matador? Of late, this question has reverberated throughout the living rooms of the nation causing great concern for television afficionados, taxicab drivers, and parking attendants. Inasmuch as the instant controversy does not deal with automobiles but motels, the aforementioned concern must remain unresolved. An analogous question, however, will be addressed by this Court: Who is the real Matador?

This is an action for infringement of service marks and false designation of origin pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq., and for unfair competition.

The controversy centers around the use of the name MATADOR, with a stylized "M" and the remainder of the letters in a block format, in conjunction with the figure of a matador, holding a red cape placed above the lettering, all of which is displayed in an archway. (hereinafter service mark cluster).

Plaintiff is a Delaware corporation[1] which presently owns nine hotels—all of which are located in southern states.[2] At the time defendant allegedly began infringing plaintiff's service marks, however, plaintiff only owned three motels—two in South Carolina and one in Georgia. Plaintiff is the owner of two federally registered service marks: 946,968 (restaurant services)—first used in commerce on February 13, 1969, registration issued on November 7, 1972 and 946,966 (motel services)—first used in commerce on May 7, 1969, ownership acquired by plaintiff on June 20, 1972.

Plaintiff alleges that the defendant has infringed upon its above service marks and has engaged in unfair competition by duplicating said service marks in conjunction with motel services in New Jersey.

The defendant, a New Jersey corporation, operates a motel in Wildwood, New Jersey under the name MATADOR. This is the only motel operated by defendant. In addition to the name MATADOR, the defendant also uses a matador figure—although somewhat different from plaintiff's. This name and figure cluster are used by the defendant on advertising brochures and postcards. Defendant first used this service mark cluster on July 10, 1970 when the motel opened and obtained a New Jersey trademark registration on April 29, 1970.

Plaintiff alleges its causes of action in a four count complaint: 1) service mark infringement, 15 U.S.C. § 1114; 2) false designation of origin and false description, 15 U.S.C. § 1125(a);

1. Plaintiff was, during the period in question, a wholly owned subsidiary of Commercial Acceptance Corporation which is now known as Valley Forge Corporation of Georgia. Valley Forge is in turn a subsidiary of Certain-Teed Products, a Maryland Corporation, with its principal place of business at Valley Forge, Pennsylvania. Ideal Millworks, a division of Certain-Teed Products, produces doors under the stylism—MATADOR.

2. Alabama, Florida, Georgia, South Carolina. Tennessee, and Texas.

3) unlawful use of trade name, 15 U.S. C. § 1126; and 4) unfair competition— both common law and pursuant to 15 U. S.C. § 1126. The complaint seeks both monetary damages and injunctive relief.

Both parties to this dispute have filed motions for summary judgment. The Court heard oral argument on these motions on April 11, 1974. At the conclusion of the arguments, the parties were granted additional time to file supplemental memoranda on the issues. This has been done and the dispute is now ripe for resolution.

## COUNT ONE

Plaintiff alleges that defendant has violated 15 U.S.C. § 1114 which states in part:

(1) Any person who shall, without the consent of the registrant— (a) use in commerce any . . . copy, or colorable imitation of a registered mark in connection with the sale, offering for sale . . . or advertising of any . . . services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

. . . . . .

shall be liable in a civil action by the registrant . . . .

This claim of violation is based on defendant's use of a close facsimile of plaintiff's service mark cluster in connection with the defendant's own motel business.

Defendant, on the other hand, admits that plaintiff is the senior user of the registered mark but contends that it has a valid defense to the instant action by reason of 15 U.S.C. § 1115(b)(5) which states in part:

If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce . . . except when one of the fol-

lowing defenses . . . is established:

. . . .

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved; . . . .

The gravamen of this defense is that since plaintiff's two service marks were registered *after* the defendant had used the mark MATADOR in connection with its motel operation, there can be no liability for infringement. Plaintiff's marks were not registered with the United States Patent Office or acquired from another company until 1972, while defendant obtained a New Jersey registration of MATADOR and commenced its motel operations in 1970. Defendant bases its claim of adoption without knowledge of plaintiff's prior use on the affidavit and answers to interrogatories of Mrs. Bonanni—the surviving owner of New Jersey MATADOR. In these documents Mrs. Bonanni states that she and her husband chose the name MATADOR for their motel without knowledge of plaintiff's activities.

On its face this would seem to be a perfectly valid defense; plaintiff, however, has raised a number of arguments which allegedly invalidate this defense for defendant.

██ Plaintiff first contends that inasmuch as section 1115(b)(5) indicates that the right to use the mark must be incontestable and since plaintiff's mark is not yet incontestable, the defense is unavailable to defendant. This contention is without merit. 15 U.S.C. § 1065 indicates that for a mark to be incontestable it must have "been in continuous use for five consecutive years subse-

quent to the date of such registration . . . ." Obviously, five years have not elapsed since the registration of plaintiff's marks and therefore they are not as yet incontestable.

It would be patently absurd for this Court to rule that an incontestable service mark is subject to a statutory defense while a contestable one is not. An incontestable mark, by definition, enjoys greater procedural protection than one of a lesser status. Tillamook County Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n, 345 F.2d 158 (9th Cir.), cert. denied, 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965). If this be the case, clearly a defense to an infringement action based on an incontestable service mark must also be applicable to a contestable mark. Avon Shoe Co. v. David Crystal, Inc., 171 F.Supp. 293, 299 (S.D.N.Y.1959), aff'd, 279 F.2d 607 (2d Cir. 1960), cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960).

▪ Next, plaintiff contends that since the president of defendant corporation, the individual who actually signed the New Jersey papers relating to registration of the mark, is deceased, evidence of his state of mind is inadmissible as hearsay; therefore, defendant cannot rely on innocent adoption as a defense. This argument would be quite compelling but for two facts: 1) Mrs. Bonanni, wife of the deceased president of defendant, was also a part owner of the business at the time the New Jersey state registration was obtained. Therefore, she is clearly competent to testify as to her own state of mind at the time of registration and has done so; 2) on an evidentiary basis, plaintiff cannot postulate, as it attempts to do, that Mr. Bonanni did know of the plaintiff's motel operations. This would present as much of a hearsay problem as Mrs. Bonanni's testimony. In short, plaintiff cannot do what it objects to Mrs. Bonanni's doing. Therefore, the position of neither party shall benefit or be harmed by the state of mind of Mr. Bonanni.

In conclusion, the defense of innocent adoption is available to defendant based on Mrs. Bonanni's own state of mind and her impressions during the proceedings.

▪ Plaintiff devotes much time and energy to discussing the collocations of common features between plaintiff's and defendant's motel advertising. Plaintiff argues that the mere fact of exact reproduction of its service mark clusters by defendant is sufficient to show willful infringement. The general proposition propounded by plaintiff is undoubtedly accurate. Dumore Co. v. Richards, 52 F.2d 311 (W.D.Mich.1930), aff'd, 52 F.2d 312 (6th Cir. 1931); 3 Callmann, Unfair Competition, Trademarks, and Monopolies, § 82.1(h) at 711 n. 64 (3d ed. 1969). However, in the case at bar these collocations of common features are not at all as extensive as plaintiff would have the Court believe. Both parties utilize a man with a cape with red and black coloring. Additionally, the lettering of the word MATADOR is nearly identical. Defendant, however, despite plaintiff's contention, does not place this figure in an archway, although the man is positioned above the word. Moreover, plaintiff no longer uses the stylized "M" because it increases the cost of signs too greatly.

Defendant asserts that its corporate owners determined that their motel should have a Spanish or Mediterranean motif. Subsequently, a brochure[3] was called to their attention which contained a certain style door titled MATADOR. Defendant seized upon this concept and decided to use that name for their motel since it characterized the design motif already chosen. Defendant then claims that the alleged deliberate common collocations all flowed naturally from the choice of the name MATADOR. In support of this argument, defendant has submitted reproductions of the Official Gazette of the United States Patent Office. These pages show three products named MATADOR—each of which has a

---

3. This brochure was the advertising prduct of Ideal Millworks. *See* note 1, *supra*.

logo of a matador with a cape. In essence, defendant argues that once the name MATADOR was chosen, all other similarities flowed naturally and logically from that choice. Additionally, defendant has submitted the affidavit of Harry Lanza, the signmaker for New Jersey MATADOR. This affidavit states that Lanza brought the name MATADOR to the attention of defendant's owner, after he had observed it on the above mentioned door brochure in a lumberyard.

It should also be pointed out that plaintiff's reputation is not such that the general public would be aware of its existence. Matador Motor Inns was not exactly a household word in 1970 or even now. Therefore, in light of the deposition, uncontroverted affidavits, and exhibits submitted by defendant, this Court is unwilling to infer from certain limited similarities of advertising that the defendant intentionally copied plaintiff's service mark cluster.

■ Plaintiff next maintains that since the door brochure [4] from which defendant obtained the name MATADOR, was published by Ideal Millworks Co., a division of the corporation of which plaintiff's parent corporation is a subsidiary, the "related company" doctrine of 15 U.S.C. § 1055 must be considered. This contention is largely without merit in that plaintiff and Ideal are not related companies within the meaning of the Lanham Act. In order for the doctrine to apply, it must be shown that Ideal is controlled by plaintiff, the registrant of the trademark, with respect to the doors Ideal manufactures. Alligator Co. v. Robert Bruce, Inc., 176 F.Supp. 377, 378 (E.D.Pa. 1959). No such showing has been made or even attempted by plaintiff, except for the statement that the related companies doctrine is applicable. This Court finds as a matter of law that Ideal and plaintiff are not related companies.

■ Also with regard to Count One, plaintiff finally contends that the doctrine of innocent adoption is inapplicable in motel cases because of the mobility of actual and potential patrons in high-powered automobiles on a vast network of interstate highways. Although the mobility of the American public with respect to automobile travel is certainly open to question in these energy conscious times, the Court will deal with this contention.

Plaintiff's argument centers around the proviso of 15 U.S.C. § 1115(b)(5), *supra*. The position taken is that the defense is only applicable in the area in which the prior continuous use is proved but that courts, when dealing with hotels, motels, and restaurants, have in effect read out that proviso because of travelling mobility and the wide geographical area from which establishments of this type draw their clientele.

The Court need not concern itself with this aspect of the argument. All cases cited by plaintiff, and to some extent refuted by defendant, involved unfair competition and either of two situations: 1) where the owner of a registered trademark shows a likelihood of entry into the innocent prior user's market area, or 2) where the owner of a registered trademark actually enters into the market area of the innocent prior user. Neither of these situations is present in the instant controversy over Count One. The unfair competition claim of plaintiff, *infra*, presents a different situation. The only relevancy market areas have in this case is for determining the area of prior continuous use by the defendant. In this regard, a further hearing is required to determine the extent of defendant's market area. This issue will be determined at trial.

In conclusion, there being no disputed material facts, summary judgment will be granted to defendant on Count One of plaintiff's complaint. The trier of fact will determine the area of defendant's prior continuous use.

4. *See* note 3, *supra*.

## COUNT TWO

In this count plaintiff seeks relief pursuant to 15 U.S.C. § 1125(a) alleging a "false designation of origin" on the part of defendant.

■ 15 U.S.C. § 1125(a) states in part:

> any person who shall . . . use in connection with . . . services, . . . a false designation of origin, or any false description or representation, including words or other symbols . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

It should be noted at the outset that a cause of action under the above section is not dependent on possession of a federally registered trademark. Potato Chip Institute v. General Mills, Inc., 333 F.Supp. 173, 179 (D.Neb.1971). "The misconceptions are obviously attributable to the fact that section 43(a) [15 U.S.C. § 1125(a)] is part of the Trademark Act where, of course, it does not logically belong." Callmann, Unfair Competition, Trademarks, and Monopolies, § 18.2(b) at 622 n. 26 (3d ed. 1967).

■ Of course, in the instant action a service mark is involved. We have held, however, that the defendant is an innocent prior adopter within an area yet to be determined. This decision places the Court on the proverbial "horns of a dilemma": Can an innocent prior adopter of a service mark be in violation of § 1125(a), or would such a determination be a contradiction in terms? This Court feels compelled to hold that if innocent prior adoption in a particular area has been proved as a defense to a service mark infringement action, then that innocent prior adoption must also serve as a defense to a section 1125(a) action.

A brief examination of the policies involved in the two statutes will illustrate the absence of any contraction in this holding. The trademark statutes were devised to: 1) protect the businessman in his property rights to the mark, and 2) protect the public. Wells Fargo & Co. v. Wells Fargo Exp. Co., 358 F.Supp. 1065 (D.Nev.1973). Section 1125(a) was also developed to protect consumers and competitors against all forms of misdescription or misrepresentation of products and services in commerce. Yameta Co. v. Capitol Records, Inc., 279 F. Supp. 582 (S.D.N.Y.1968). Obviously, the policies of the two enactments are virtually the same. The difference lies in the initiation point of the protection. The general trademark statutes protect a federally registered mark from a statutorily defined infringement, while Section 1125 protects one competitor from the actions of another amounting to a form of unfair competition. Just as, in some cases, a finding of infringement of a service mark will *a fortiori* lead to a violation of Section 1125(a), so too will a finding of innocent adoption of a service mark lead to the almost inescapable conclusion of no violation of Section 1125(a). It would be incongruous for this Court to find that defendant innocently adopted plaintiff's mark, thereby giving defendant the right to use that mark in the area of continuous prior use, and then find that defendant has engaged in a false designation or representation of origin. The two statutes in question could not have been intended to achieve that result; Section 1125(a) "must still be read in the context of the statute in which it appears . . . ." General Pool Corp. v. Hallmark Pool Corp., 259 F.Supp. 383, 386 (N.D.Ill. 1966).

Plaintiff has cited Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641 (3d Cir. 1958) as authority for the proposition that innocent adoption is irrelevant in a Section 1125(a) action. *Parkway* does not stand for such a theory. The *Parkway* court said: "[M]istake is not a defense to an action under this section for there is no requirement that the falsification occur wilfully and with intent to deceive." *Id.* at 648. Defendant does not claim mistake as lack

of intent in this action; rather, defendant maintains that as a matter of right it can use the name MATADOR which it innocently adopted. The issue of falsification is not at all present in Count Two.

In Steak & Brew, Inc. v. Beef & Brew Restaurant, Inc., 370 F.Supp. 1030 (N.D.Ill.1974), a case closely analogous to the one at bar, the court held that the defendant had not violated Section 1125(a) because "[t]hey innocently adopted the name for use in a market area in which plaintiff was then unknown. They are entitled to the continued use thereof." Additionally, in discussing the issuance of a preliminary injunction in a Section 1125(a) case the court, in Sutton Cosmetics (P.R.) v. Lander Co., 455 F.2d 285 (2d Cir. 1972), indicated that priority of use would not necessarily prevail over an innocent second use. *Id.* at 289.

Therefore, for the foregoing reasons, plaintiff's motion for summary judgment as to Count Two will be denied and that of defendant's will be granted.

## COUNT THREE

■ This count is founded on 15 U. S.C. § 1126(g) which provides that trade or commercial names shall be protected regardless of filing or registration. The persons protected are defined by subsection (b). In L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649, 653 (3d Cir. 1954), the court held that Section 1126(h) was not applicable to a controversy between United States citizens. *L'Aiglon* analyzed the legislative history of the section as well as its title —*International Conventions*. We find that the reasoning of *L'Aiglon*, as applied to subsection (h), is equally applicable to subsection (g) and therefore defendant's motion for summary judgment as to Count Three will be granted.

## COUNT FOUR

This count has a dual basis: 1) 15 U. S.C. § 1126(h) and 2) unfair competition.

In light of this Court's reasoning in discussing Section 1126(g), *supra* and in light of L'Aiglon Apparel v. Lana Lobell, Inc., *supra,* summary judgment will be granted to defendant as to the 15 U.S.C. § 1126(h) aspect of this count.

■ The remaining facet of this case is plaintiff's claim of common law unfair competition. Ordinarily, this Court would be without jurisdiction to hear this claim in the absence of pendent jurisdiction. Plaintiff, however, has also alleged diversity of citizenship and the requisite jurisdictional amount. As a result, jurisdiction exists independently of the federal statutory actions.

Additionally, since the law of unfair competition developed independently of, or at least tangentially to, federal trademark statutes, we are not faced with the disturbing prospect met earlier—that is, resolution of two statutes which could dictate inconsistent and illogical results based on the same facts and the same policy. It is within the realm of possibility that the law of unfair competition might forbid what the trademark statutes would seemingly permit. With this, in mind, the Court can proceed to analyze this last claim.

It is fundamental to the law of unfair competition, particularly in cases dealing with restaurants, hotels, and motels, that geographical trading areas, likelihood of public confusion, and extent of reputation are of paramount importance. *See, e. g.,* Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); Holiday Inns of America v. B & B Corporation, 409 F. 2d 614 (3d Cir. 1969); Fred Harvey v. Harvey House, Inc., 278 F.Supp. 172 (E.D.Pa.1968); Tisch Hotels, Inc. v. Atlanta Americana Motor Hotel Corp., 254 F.Supp. 743 (N.D.Ga.1966); Quality Courts United, Inc. v. Quality Courts, Inc., 140 F.Supp. 341 (M.D.Pa.1956). All of these factors are seriously and rigorously disputed in this case. Some of them are only mentioned in passing in opposing briefs. We find that there are disputed material facts and therefore the grant of summary judgment

would be inappropriate. Accordingly, both plaintiff's and defendant's motions for summary judgment, as to the unfair competition aspect of Count Four, will be denied.

Counsel may submit an order in accordance with the foregoing opinion.