691 F.2d 168
 217 U.S.P.Q. 108
 James WILLIAMS, Individually and d/b/a GMP Company
v.
CURTISS-WRIGHT CORPORATION.
Appeal of James WILLIAMS, Individually and d/b/a GMP Company
and Turbine Alloy Company.
 No. 82-5181.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 14, 1982.
Decided Oct. 21, 1982.
 
 James W. Broscious (argued), Schumann, Seybolt & Broscious, Washington, N. J., for appellants.
 Robert F. Brodegaard (argued), Helene D. Jaffe, Ronald D. Reynolds, New York City, Francis J. Vernoia, Newark, N. J., for Curtiss-Wright Corp.; Weil, Gotshal & Manges, New York City, Zazzali & Kroll, Newark, N. J., of counsel.
 Before GIBBONS, WEIS and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 James Williams appeals from an order preliminarily enjoining him from using a numbering system for replacement parts for the J-65 jet engine consisting of the part number selected by Curtiss-Wright Corporation, the manufacturer of the J-65 engine, prefixed by the letter G. The numbering system was proposed by Williams following the affirmance by this court of a preliminary injunction prohibiting him from using trade secrets of Curtiss-Wright.[1] Curtiss-Wright contends that the numbering system inadequately complies with that injunction, and also violates section 43(a) of the Lanham Act.[2] Williams proposes using the numbering system on three types of J-65 replacement parts: (1) parts manufactured by Williams from drawings created by reverse engineering from genuine Curtiss-Wright parts; (2) surplus unused parts manufactured by Curtiss-Wright and obtained from other sources such as sales of American military surplus; and (3) used parts manufactured by Curtiss-Wright and reconditioned by Williams. Customers for the J-65 parts are mostly foreign military organizations. We conclude that the grant of a preliminary injunction against use of the proposed numbering system on the first category of parts should be affirmed, but that the district court's findings of fact do not adequately support the grant of a preliminary injunction as broad as that issued with respect to the second and third categories.
 
 I.
 
 2
 The preliminary injunction which this court affirmed in the prior appeal required Williams to serve and file a proposal for unique identification of parts. Up to the time that injunction issued Williams had been using the Curtiss-Wright numbering system. Thus the only change Williams proposed in response to the earlier order was addition of the prefix G. Curtiss-Wright, contending that the Williams proposal violated section 43(a) of the Lanham Act and the New Jersey common law of unfair competition, applied for a temporary restraining order prohibiting the practice. No temporary restraining order issued, but by agreement of the parties the trial court scheduled a single hearing to consider an application for preliminary injunctive relief. That hearing encompassed both the Lanham Act and New Jersey law claims of unfair competition and Williams' compliance with the September 14 order. Following a two day hearing the trial court issued an opinion holding that the numbering system violated Section 43(a) and failed to satisfy the earlier preliminary injunction.[3] Williams v. Curtiss-Wright Corp., No. 79-1431 Civ. (N.J. March 8, 1982). The court's order dealt separately with each category of Williams parts.
 
 
 3
 As to parts manufactured by Williams from drawings created by reverse engineering, the court prohibited Williams' proposed numbering system, and ordered that such parts could be sold if the Curtiss-Wright part number was transposed to block letters alphabet A through J for the digits 1 through 0. As to unused and unmodified Curtiss-Wright parts, the court prohibited Williams from delivering such parts identified as having been manufactured by Williams, and ordered: (1) that the Curtiss-Wright part number remain on the part; (2) that Williams add its alphabetical equivalent to the part; and (3) that Williams disclose to the purchaser that such parts have not been inspected or approved by Curtiss-Wright subsequent to their original manufacture. Finally, as to surplus used Curtiss-Wright parts upon which Williams performs some manufacturing function, the court ordered the obliteration of the Curtiss-Wright number and the substitution of the Williams alphabetized equivalent. Id.
 
 
 4
 There is evidence in the record that the established practice in the aircraft engine manufacturing industry is to identify parts, original and spare, by the number of the drawing from which they are made. The drawings contain not only dimension information but also material specification and other technical data. There is also evidence that for military procurement often several vendors of parts are approved sources, and that such vendors usually use a distinctive numbering system. Finally there is evidence that sometimes military procurement is from approved alternative sources: that is, sources which manufacture in accordance with the specifications shown on the original manufacturer's drawings. In those situations the industry practice is for the original manufacturer and the approved alternative source to use the same part number, with the approved alternative source adding a letter prefix such as G. The evidence suggests that the general understanding in the industry is that the approved alternative source has submitted its drawing and sample part for approval and testing by the government prior to approval. It is undisputed that Williams is not an approved alternative source for J-65 parts.
 
 II.
 Reverse Engineered Parts
 
 5
 The relevant part of the prior injunction, quoted in the margin, deals only with reverse engineered parts. It requires that such parts "shall be uniquely identified in a fashion that will make it possible to establish the source of such part even in the event of failure...." Williams v. Curtiss-Wright Corp., No. 79-1481 Civ. (N.J. Sept. 14, 1981). The prior decision of this court affirmed that injunctive provision, and thus it is law of the case. The injunction expressly requires submission to the court of a plan to achieve such unique identification, and impliedly reserves to the court authority to consider its sufficiency in achieving the intended result. The court found:
 
 
 6
 The evidence is also clear that to allow use of the Curtiss-Wright number plus the prefix G is inadequate, since the segment carrying the prefix may be broken off and lost in the event of failure and ensuing tumbling and churning. This would leave what remains as all or part of a Curtiss-Wright number with no means effectively and easily to establish manufacturing source. Also, the testimony about secondary meaning acquired by the prefix makes its use, under the circumstances of this case, unwise.
 
 
 7
 Williams v. Curtiss-Wright Corp., No. 79-1431 Civ.Mem. (N.J. Feb. 10, 1982). The first injunction was predicated primarily upon the likelihood that Curtiss-Wright would be able to establish that Williams was manufacturing not reverse engineered parts, but parts manufactured from drawings which were Curtiss-Wright trade secrets acquired in violation of New Jersey law. The unique identification requirement was an appropriate pendente lite provision, since at final hearing relief with respect to parts sold pendente lite might be required.
 
 
 8
 The court's finding that Williams' prefix proposal is an inadequate compliance with the unique identification requirement is not clearly erroneous. The prior preliminary injunction, which this court affirmed, establishes the unique identification requirement as law of the case. It is true that some system of unique identification other than the transposition of digits to letters might have been appropriate. None other was tendered by Williams save that found to be inadequate. In prohibiting use of a letter prefix with the Curtiss-Wright number while permitting sales of reverse engineered parts with the Curtiss-Wright number transposed to letters the court did not commit an abuse of discretion. Our limited scope of review precludes us from adopting the suggestion of the dissent. On remand, Williams may be able to convince the trial court to modify the preliminary injunction by adopting one of the other methods of identification referred to by the dissent. These methods may also be considered before a permanent injunction, if any, is granted.
 
 
 9
 The court's reference to the secondary meaning of the suffix obviously is a reference to Curtiss-Wright's contention that Williams' numbering system amounts to a "false designation of origin" or a "false description or representation" within the meaning of section 43(a). Considering the evidence of the industry practice for numbering by an approved alternative source, a finding by the court that Curtiss-Wright is likely to succeed on the merits of its section 43(a) claim probably would be affirmed even absent the earlier preliminary injunction. The trial court did not, however, explicitly so find. Thus, in affirming the preliminary injunction as to reverse engineered parts we do not rely on the Lanham Act or the New Jersey law of unfair competition, but only on the prior injunction.
 
 III.
 
 10
 Surplus Unused Parts Manufactured by Curtiss-Wright
 
 
 11
 The prior injunction does not apply to parts manufactured by Curtiss-Wright. As to such parts, therefore, the injunction under review here may be sustained only on the basis of Curtiss-Wright's claim, not considered in the first appeal, that use of Williams' proposed numbering system violates section 43(a) or the New Jersey law of unfair competition. In determining whether the trial court erred in preliminarily enjoining sales of unused surplus Curtiss-Wright parts except on the conditions outlined above, we review for abuse of discretion. In the context of review of a preliminary injunction, that standard requires our consideration of whether the court made an obvious error in applying the law or a serious mistake in considering the proof. The applicable law includes the substantive law on which the plaintiff predicates its claim, as well as the remedial law governing pendente lite relief. The latter includes the requirements that the court find likelihood of success on the merits and likelihood of irreparable harm pendete lite, that it balance the competing equities, and that it consider the public interest. SK&F, Co. v. Premo Pharmaceutical Labs, 625 F.2d 1055, 1066 (3d Cir. 1980).
 
 
 12
 Relying on Deering Harvester Co. v. Whitman & Barnes Manufacturing Co., 91 F. 376 (6th Cir. 1898) and its progeny, Williams urges that it may use any numbering system it chooses, because a numerical system is not entitled to trademark protection. We reject that contention, because it misconstrues the thrust of Curtiss-Wright's complaint. section 43(a) of the Lanham Act creates a federal cause of action for unfair competition, even absent a federal registered trademark. See, e.g., Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 372 (1st Cir. 1980); Matador Motor Inns, Inc. v. Matador Motel, Inc., 376 F.Supp. 385, 390 (D.N.J.1974). Whatever continuing validity the Deering Harvester line of authorities may have as trademark law, it has no relevance to other forms of unfair competition proscribed by section 43(a) or the state common law of unfair competition.
 
 
 13
 The main thrust of Curtiss-Wright's claim about unused surplus parts is that Williams' proposed numbering system is a form of reverse palming off: that is, palming off Curtiss-Wright parts as if they were Williams parts. The theory is that, because of the industry practice about authorized alternative sources, use of the Curtiss-Wright number with the G prefix will convey the impression that Williams is an approved alternative source which manufactured the parts itself. A false designation of origin in the form of reverse palming off is prohibited by the Lanham Act. Smith v. Montoro, 648 F.2d 602 (9th Cir. 1981); L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954). Thus Curtiss-Wright has unquestionably stated a claim, with respect to the genuine unused parts, upon which relief may be granted under section 43(a). Moreover, the evidence about industry practice might well support a finding that Williams was representing itself in the marketplace as an approved alternative source while passing off Curtiss-Wright parts as its own.
 
 
 14
 Despite our conviction that the law recognizes claims such as Curtiss-Wright asserts, however, we have difficulties with the preliminary injunction insofar as it deals with unused genuine parts. That difficulty arises from the fact that the trial court's findings of fact and legal discussion are entirely unrelated to the theory which Curtiss-Wright advances in its support. The court never focused upon the problem of reverse palming off. Instead it discussed the problems which might confront Curtiss-Wright in the event warranty or products liability claims arose out of use of the parts in the marketplace. The court reasoned that genuine parts might deteriorate in storage, and that the use of deteriorated surplus unused parts could be life threatening.
 
 
 15
 We appreciate the genuineness of the trial court's concern about product safety, a concern shared by Curtiss-Wright. We are not prepared, however, to hold that such a concern is a sufficient reason for granting preliminary injunctive relief in a case predicated upon reverse palming off. Neither section 43(a) of the Lanham Act nor the equivalent New Jersey law of unfair competition addresses the issue of deterioration in storage of genuine products not misrepresented. If there was evidence and the court made findings that Williams was misrepresenting the age of the parts, such misrepresentation might well be held to be a "false description or representation" within the meaning of section 43(a). There is no direct evidence of such misrepresentation, and the court did not infer from circumstantial evidence that such misrepresentation was taking place.
 
 
 16
 Curtiss-Wright nevertheless urges that the preliminary injunction directed at conditions of sale of genuine unused parts should on the present record be affirmed. The argument for an affirmance on grounds not addressed by the trial court is in this instance rather strong. It would be stronger still if the terms of the injunction were more carefully tailored to the prevention of deception as to origin of goods. We could then conclude that the trial court at least had that issue clearly in mind. But besides the general prohibition against representing Curtiss-Wright parts as having been manufactured by Williams, the only provision in that part of the injunction dealing with genuine unused parts which is arguably directed to that issue is that which restrains Williams from removing the Curtiss-Wright part numbers. There is no evidence suggesting and no finding that Williams actually intends to remove those numbers. His proposal is merely to add the prefix G. We cannot tell, from the trial judge's concern, whether he actually concluded that use of the prefix G, in light of the industry practice, would be understood as a representation that Williams was the manufacturer. On this record such a conclusion, while permissible, even likely, is not inevitable. The task of drawing inferences from the record evidence is one which should in almost all cases be performed at the trial level.
 
 
 17
 Curtiss-Wright also suggests that the injunction, insofar as it requires Williams to disclose to the purchaser that the parts have not been inspected or approved by it subsequent to the original manufacture, may be sustained as an injunction against misrepresentation of the product's age or condition. Entirely apart from the reverse palming off issue, such a misrepresentation would, we think, in some circumstances be a violation of section 43(a)'s prohibition against false descriptions or representations. But just as with the reverse palming off claim, the trial court's findings of fact are wholly inadequate for an affirmance on that ground. The court never found that Williams did, or would, misrepresent the age or condition of the parts.
 
 
 18
 Given the irrelevancy of the court's findings to claims either of reverse palming off or of misrepresentation as to product age or condition, and the absence of any findings relevant to those claims, we cannot affirm the preliminary injunction with respect to genuine unused surplus Curtiss-Wright parts.
 
 IV.
 
 19
 Curtiss-Wright Parts Reconditioned by Williams
 
 
 20
 Williams purchases used J-65 engines, disassembles them, and reconditions major components such as the turbine blades. Curtiss-Wright contends that the reconditioning results in a significant alteration of the part, while Williams contends that the alteration merely restores the part to compliance with the original specifications by rebuilding them to compensate for wear during use. The trial court did not resolve this factual dispute. The court's entire discussion of the reconditioned parts is as follows:
 
 
 21
 The most difficult problem is presented in the case of parts recovered by the disassembly of used engines. In this case, the industry practice evidently involves consideration of the history of each part from logs or other records. Nothing indicates whether such records are obtained on the purchase of a used engine, or how the information could be used when the used parts are resold by a third party like Williams, other than the original manufacturer. Here, again, the problem stems from the use of the digital and alphabetized part numbers to identify source, except that there is superimposed the use history while the part was in the hands of a user.
 
 
 22
 For this category, the only proper solution seems to be to require that if Williams wishes to resell used parts, he ought to undertake full responsibility for them. This would involve obliteration of the digital Curtiss-Wright number and substitution of the Williams alphabetized number as though he had made them himself, plus a written record (with copy to the buyer) disclosing that the parts are used, stating what inspection and repair have been performed by Williams, and adding the legend mentioned above.
 
 
 23
 Williams v. Curtiss-Wright Corp., No. 79-1431 Civ. (N.J. Feb. 10, 1982).
 
 
 24
 In Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1925), a trademark infringement case, the Supreme Court held that a reconditioner of spark plugs could resell them without removing the original Champion label so long as it disclosed that the plugs were used and reconditioned. Williams relies on that authority, while Curtiss-Wright points out, correctly, that it requires a disclosure of the reconditioning. It urges that Williams' use of the G prefix with a Curtiss-Wright number may be understood in the marketplace as a representation that the parts are new parts manufactured by Williams as an approved alternative source. Such a finding would, we think, support injunctive relief under section 43(a). Moreover the use of the Curtiss-Wright part number alone, without a disclosure that the part was altered, would violate the spirit if not the letter of the Champion Spark Plug holding. Curtiss-Wright's part number is not a trademark. Given the practices in the industry, however, it is, when used alone, a significant designation of origin. No less than the trade mark law, the unfair competition law codified in section 43(a) would proscribe use of such a designation of origin on used and reconditioned goods without full disclosure.
 
 
 25
 Our difficulties with the injunction addressed to Williams' reconditioned parts business, unfortunately, are essentially the same as those we noted with respect to his unused surplus parts business. The court's findings seem to be directed more at Curtiss-Wright's potential exposure to warranty or product liability claims than to protecting Curtiss-Wright and the marketplace from unfair competition. The solution adopted, obliteration of the original Curtiss-Wright number may, as an indication of source of origin, be as misleading as Williams' use of the G prefix, since it may tend to conceal the fact that Curtiss-Wright is the manufacturer.
 
 
 26
 Curtiss-Wright's argument for an affirmance of the injunction requiring disclosure that the used parts are such and have been reconditioned is more compelling than the same argument addressed to that part of the injunction dealing with unused parts. The Williams proposal for use of the original part number and a G prefix would actually facilitate passing the parts off as new. Nevertheless the court's findings are insufficient to sustain the injunction as drawn. The court does seem to have focused upon the need for disclosure that the parts are reconditioned. It seems to us appropriate to affirm only so much of the preliminary injunction as requires Williams to "maintain a written record (with copy to the buyer) disclosing that the parts are used, (and) stating what inspection and repair have been performed by Williams...." Williams v. Curtiss-Wright Corp., No. 79-1341 Civ. (N.J. March 8, 1982).
 
 V.
 
 27
 The order appealed from will be affirmed to the extent that it deals with reverse engineered parts manufactured by Williams, reversed to the extent that it deals with genuine unused surplus Curtiss-Wright parts, and to the extent that it deals with used parts reconditioned by Williams, vacated and remanded for the entry of the injunction in the limited form approved in part IV hereof. Each party shall bear his or its own costs.
 
 
 28
 WEIS, Circuit Judge, concurring and dissenting.
 
 
 29
 I join in the majority opinion except for that portion of Part II affirming the trial court's proposed identification system for the reverse engineered parts. I would reverse that part of the preliminary injunction as well.
 
 
 30
 As the majority opinion states, the issue before us is whether the preliminary injunction is a proper implementation of the earlier order requiring unique identification of parts manufactured by Williams. The solution devised by the district court meets that objective, but in a way that unnecessarily restricts Williams' ability to sell the parts.
 
 
 31
 The J-65 jet engine is used in military aircraft and a purchaser of parts must take into account the possibility that the engines will require repair under combat conditions. Sophisticated facilities, adequate supervision and ample time are not always available in those circumstances and hence the possibilities for error increase. To add to these difficulties by using a parts designation scheme that must be decoded and correlated with numbers in a repair manual is hardly a selling advantage. Williams' contention that his customers want the parts identified by number is not incredible, particularly in the case of sales to foreign countries.
 
 
 32
 The net result of the trial court's order is to grant a competitive edge to Curtiss-Wright that is not warranted by the present posture of the litigation and is inconsistent with the court's decision to permit Williams to sell the reverse engineered parts. This state of affairs arises from an over-emphasis on the necessity for identification in the event of a parts failure and a lack of attention to the needs of the mechanic on the line. The possibility of confusion by workmen is all too real in the formula devised by the district court. A mechanic in a foreign country can be expected to identify a part numbered 3692 without much trouble. If, however, he picks up a Williams' part marked CFIB, he may not know that it is the same part. Or, even more to the point, he may not know that CFIE is a different one.
 
 
 33
 The record shows that there are other feasible methods that make the marking distinctive, yet retain the part number. For example, the figures could be italicized or inscribed by a different process than that used by Curtiss-Wright. The number could also be underlined, encircled or boxed. Each of these alternatives or, indeed, a combination of some or even all of them, would solve the problem of identification. In addition to simplicity, such a solution would allow Williams to sell to customers who insist upon number identification for the parts.
 
 
 34
 I recognize the limited review we extend to the grant or denial of preliminary injunctions, but the order at issue here demands correction. I would remand with instructions that a means of identification be devised that, unlike the one framed by the district court, would not have such an unnecessary, anti-competitive drawback.
 
 
 
 [1]
 Williams v. Curtiss-Wright Corporation, 681 F.2d 161 (3d Cir. 1982)
 
 
 [2]
 Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation
 15 U.S.C. § 1125(a) (1976).
 
 
 [3]
 In relevant part that injunction provides:
 
 
 [3]
 The grant of this preliminary injunction does not prohibit Williams from manufacturing, offering for sale, or selling parts made by Williams by reverse engineering and without the use of Curtiss-Wright's trade secret data; provided however, that in order for Williams to come within this exclusion, all parts for the J-65 engine to be manufactured by Williams shall be uniquely identified in a fashion that will make it possible to establish the source of such part even in the event of failure and that before offering any parts for sale, Williams shall file with the Court and serve on counsel for Curtiss-Wright, a statement describing the method to be employed to achieve this unique identification
 Williams v. Curtiss-Wright Corp., No. 79-1431 Civ. (N.J. Sept. 14, 1981).