Jerry A. **WOODKE**, Plaintiff,

v.

Patrick **DAHM**, Individually, Douglas Blass, Individually, and both d/b/a Cornbelt Manufacturing, Inc., Michael Depew, Individually, and d/b/a Clark Trailer Sales, Inc., Defendants.

No. C 94–4050.

United States District Court,
N.D. Iowa,
Western Division.

Jan. 17, 1995.

Robert Kohorst, of the Kohorst Law Firm, Harlan, IA, for plaintiff.

Maurice B. Nieland of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, IA, appeared, for Iowa defendants.

Paul Yaneff of Sioux City, IA, for Fla. defendant DePew.

Jeffrey A. Sar of Baron, Sar, Goodwin, Gill, Lohr & Horak, Sioux City, IA, for Fla. defendant Clark.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR IMPROPER VENUE

BENNETT, District Judge.

I. PROCEDURAL AND FACTUAL BACKGROUND ................................. 182
 A. Procedural Background ..................................................... 182
 B. Factual Background ....................................................... 184

II. LEGAL ANALYSIS ...................................................................... 185
 A. Subject Matter Jurisdiction And Failure To State A Claim ....................... 185
 1. Facial Or Factual Challenge Pursuant To Rule 12(b)(1) ..................... 186
 2. A Cognizable Federal Claim ...........................................:... 188
 3. Rule 12(b)(6) Challenge For Failure To State A Claim ..................... 192
 B. Personal Jurisdiction ...................................................... 192
 1. Minimum Contacts ..................................................... 192
 2. The "Effects Test" For Personal Jurisdiction .............................. 195
 C. Venue .................................................................... 196
 1. Venue In Lanham Act Cases ............................................ 197
 2. Venue In This Case ..................................................... 199
III. CONCLUSION ......................................................................... 200

Plaintiff, the owner of the trademark for Hawkeye Eagle brand semi-trailers, brought this action alleging unfair competition under the Lanham Act and requesting an injunction. Plaintiff further alleges state-law claims of breach of contract, with a demand for an accounting, and conspiracy to interfere with business relations. Some of the defendants, manufacturers of semi-trailers, are individuals and a corporation doing business in Iowa. The remaining defendants, dealers in semi-trailers, are an individual and a corporation doing business in Florida and other southern states. The Florida defendants have separately moved to dismiss the complaint as to them. The corporate Florida defendant has moved to dismiss for lack of personal jurisdiction and improper venue, while the individual Florida defendant has moved to dismiss on those grounds and on the additional grounds of lack of subject mat-

ter jurisdiction and failure to state a claim upon which relief can be granted. Although the court concludes that plaintiff has made a *prima facie* showing of personal jurisdiction over the Florida defendants, Iowa is not the proper venue for this action, and this case must therefore be dismissed.

## I. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural Background

Plaintiff Jerry Woodke, a handler and seller of semi-trailers, extras, and repair parts under the trademark "Hawkeye Eagle," filed his complaint in this matter on June 22, 1994. Defendants include Patrick Dahm and Douglas Blass individually, both residents of Early, Iowa, and their business, Cornbelt Manu-

facturing, Inc., an Iowa corporation with its principal place of business in Early, Iowa. Cornbelt is a manufacturer of semi-trailers. The remaining defendants are a Florida corporation and an individual residing in Florida. The Florida corporate defendant, Clark Trailer Sales, Inc., is a dealership for semi-trailers, with its principal place of business in Jacksonville, Florida. The individual Florida defendant is Michael DePew (a/k/a Chauncey Michael DePew, III), a resident of Jacksonville, Florida, and an employee and sometime officer of Clark.

Woodke's complaint is in seven counts. Count I alleges unfair competition in violation of the Lanham Trademark Act, 15 U.S.C. § 1125, by defendants, acting individually or in concert. Defendants are alleged to have published in the "Southeastern Truck Paper" an advertisement including a photograph of a Hawkeye Eagle brand hopper bottom trailer with Woodke's registered trademarks obscured, identifying the trailer instead as a "43' Cornbelt Peanut Hopper." Count II seeks a permanent injunction to protect Woodke's reputation and the reputation of Hawkeye Eagle brand trailers from irreparable harm. Count III alleges breach of an oral joint venture agreement by the Iowa defendants. Count IV seeks an accounting from the Iowa defendants of all monies received by those defendants that relate to the joint venture. Count V alleges that all defendants conspired together to destroy Woodke's business and to interfere with his business relations. Count VI alleges the willful failure by the Iowa defendants to perform warranty repairs as required by the joint venture agreement. Count VII alleges that the individual Iowa defendants and the Florida defendants caused the corporate Iowa defendants to breach its joint venture agreement with Woodke.

The Iowa defendants answered the complaint on September 2, 1994. The Florida defendants, however, separately moved to dismiss the complaint as to them.[1] DePew moved to dismiss on October 18, 1994, pursuant to *Fed.R.Civ.P.* 12(b)(1), (2), (3), and (6), asserting lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim on which relief can be granted. Clark moved to dismiss the complaint on October 25, 1994, but only on the grounds of lack of personal jurisdiction and improper venue, pursuant to *Fed. R.Civ.P.* 12(b)(2) and (3). The Florida defendants have submitted briefs and affidavits in support of their motions to dismiss, as has Woodke in resistance. Clark requested oral argument on its motion, and the court held oral arguments on December 13, 1994. At the hearing, counsel Robert Kohorst, of the Kohorst Law Firm in Harlan, Iowa, appeared for the plaintiff. Counsel Maurice B. Nieland of Rawlings, Nieland, Probasco, and Killinger in Sioux City, Iowa, appeared for the Iowa defendants. Defendant DePew was represented by counsel Paul Yaneff of Sioux City, Iowa, and defendant Clark was represented by counsel Jeffrey A. Sar of Baron, Sar, Goodwin, Gill, Lohr & Horak, also in Sioux City, Iowa.

At the conclusion of the hearing, the court requested further briefing of the question of the proper venue for the Lanham Act claim. Plaintiff filed such a brief on December 27, 1994, and defendants DePew and Clark filed a joint reply on January 11, 1995. This matter is now fully submitted.

The Florida defendants assert that they do not have sufficient minimum contacts with the state of Iowa for this court to assert personal jurisdiction over them. They argue that Iowa is not the only district in which the lawsuit could have been brought, and that Woodke could have obtained personal jurisdiction over the Florida defendants in Florida. Initially, they also asserted that any wrongful acts occurred outside of the state of Iowa, presumably arguing that venue in this district is therefore improper.[2] In their sup-

---

1. To summarize, Counts I, II, V, and VII are directed at DePew and Clark.

2. DePew adopted the brief of Clark in support of his motion to dismiss. However, Clark only asserted lack of personal jurisdiction and improper venue as grounds for its motion to dismiss.

Thus, DePew has not made any argument on the additional grounds he has asserted for dismissal. Similarly, although the court believes that Clark's original brief can be construed to include argument on the issue of improper venue, it explicitly argued only lack of personal jurisdiction. Clark's and DePew's joint supplemental

plemental reply brief, the Florida defendants argue that courts have consistently held that venue in a Lanham Act case lies where the "passing off" occurred, and that any alleged "passing off" in this case occurred outside of Iowa.

Woodke asserts that both Florida defendants have sufficient contacts with this forum for this court to assert personal jurisdiction over them. Furthermore, he argues that a substantial part of the events giving rise to this lawsuit occurred in this district, making this district a proper venue, even if it is not the only proper venue.[3] In his supplemental brief on venue, Woodke argues that under either a rule that venue lies where the "passing off" occurred or a rule that looks instead at where the injury is felt, venue is proper in Iowa. Woodke argues that the "roots" of any scheme to "pass off" his trailers as defendants' were in Iowa, because that is where any plan to do so was hatched and where the goods were prepared. Furthermore, he asserts that he will sustain injury from the "passing off" in Iowa.

### B. Factual Background

The Florida defendants and Woodke have all supplied affidavits in support of their positions with regard to the motions to dismiss from which, in addition to the complaint and the answer of the Iowa defendants, the court has extracted the following facts. Woodke asserts that he has for many years conducted business in the design and selling of semi-trailers out of Schaller, Iowa. Woodke states that he obtained federal registration of his trademark for "Hawkeye Eagle" brand semi-trailers under the Lanham Act on May 31, 1981, with a first use in commerce on October 1, 1977. Woodke further asserts that he entered into a joint venture with the individual Iowa defendants, and subsequently with the corporation they formed, Cornbelt, all of Early, Iowa, for the purpose of manufacturing semi-trailers under the Hawkeye Eagle trademark. Woodke states that in late 1980 he obtained a federal identification number

to enable Cornbelt to manufacture and sell Hawkeye Eagle semi-trailers. Prior to 1980, Woodke states that the Iowa defendants sold the trailers they manufactured through a now defunct company. Woodke asserts that he has not received his full share of the profits from his joint venture with the Iowa defendants.

Woodke also states that he established a distribution network for his trailers involving a number of dealerships including Clark. Woodke states that Clark's representative was DePew, and that DePew made a number of trips to see him and to visit the Iowa defendants' operations to conduct the business of arranging for sales of Woodke's trailers through Clark, and that Woodke prepared letters for DePew so that he could arrange financing to purchase trailers from other companies and individuals. Woodke states that other business contacts with Clark through DePew took the form of numerous pieces of correspondence and telephone calls from Clark to Woodke at his place of business in Iowa. Furthermore, Woodke states that the dealership agreement he entered into with Clark was executed in the State of Iowa, and that delivery on all shipments of trailers for Clark was to be taken at Early, Iowa.

The Florida defendants dispute few of the facts Woodke states concerning the business relationship among the parties. However, the Florida defendants assert that other facts lead to the conclusion that this court cannot properly exercise personal jurisdiction over them or that Iowa is not the proper venue for this action. Clark asserts that it is not licensed to do business in Iowa, does not conduct any business in Iowa, does not maintain any offices, warehouses, or other places of business within this district, and has no agents, employees, or representatives in the State of Iowa. Clark asserts that it has never sold a trailer in the State of Iowa, had a customer in this state, or solicited business in this state. Clark states that its dealership

---

brief primarily addresses the venue question, with some argument concerning personal jurisdiction, but it does not address DePew's additional grounds for dismissal either.

3. Woodke's complaint asserted venue was proper only under 28 U.S.C. § 1391(b)(3), but he now argues that venue is proper under any of the three provisions for venue in 28 U.S.C. § 1391(b).

area, pursuant to the dealership agreement, if there was one, never included Iowa, because Clark's sales have occurred only in North and South Carolina, Florida, Georgia, Alabama, and, on one occasion, Texas, nor did any relationship Clark had with Woodke ever contemplate any activities by Clark in Iowa. Furthermore, Clark asserts that circulation of the "Southeastern Truck Paper," in which the allegedly tortious advertisement appeared, is restricted to the southern states of Florida, Georgia, Alabama, Mississippi, South Carolina, North Carolina, Kentucky, and Tennessee, but that the paper has never been circulated in Iowa. Clark also argues that delivery of trailers in Early, Iowa, was into the hands of the ultimate buyer, never to its dealership.

Although DePew states his belief that there was a dealership agreement between Clark and Woodke, he states that he was not an officer of Clark at the time and was not a party to the agreement. Rather, DePew asserts that any contact he had with Woodke on behalf of Clark was as Clark's employee. Clark therefore denies Woodke's allegation that he "does business" as Clark Trailer Sales. Although DePew has subsequently become a vice president of Clark, he states that he has never been a stockholder of the corporation. DePew admits that he visited Woodke's place of business in 1983, and in August of 1990. He states that the first trip was to visit Woodke's plant, and the second was to inquire about when shipments would be made. DePew denies that he conducted any business with Woodke personally at the time of his second visit. In his affidavit and motion to dismiss, DePew also states that he has never resided in Iowa, conducted business in Iowa, maintained a place of business in Iowa, or employed any agents, employees, or representatives in Iowa. Clark and DePew deny any conspiracy with the Iowa defendants for any purpose.

## II. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction And Failure To State A Claim

██ DePew has moved to dismiss for lack of subject matter jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1). *Fed.R.Civ.P.* 12(b)(1) provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion before answering the complaint filed in any action. The federal district courts have always been courts of limited jurisdiction. *See* U.S. CONST., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison,* 1 Cranch 137 [5 U.S. 137], 2 L.Ed. 60 (1803)). *See also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169 (8th Cir.1994) (federal court jurisdiction limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir. 1992) (citing *Sanders, infra* ); *Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed.Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987).

██ "The parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court." *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965). *See also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 25, 109 S.Ct. 2273, 2287, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) ("[T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent," citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978); *Sosna v.*

*Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975); *California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, and n. 17, 71 S.Ct. 534, 541–42, and n. 17, 95 L.Ed. 702 (1951); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 8 Pet. 148, 149 [33 U.S. 148, 149], 8 L.Ed. 898 (1834)); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."). Even where " 'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.' " *White v. Nix,* 43 F.3d 374 (8th Cir.1994) (quoting *Lewis v. United States Farmers Home Admin.,* 992 F.2d 767, 771 (8th Cir.1993)). The federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994); *Sanders,* 823 F.2d at 216. However, the Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." *Id.* Because jurisdiction is a threshold issue for the court, the district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States,* 994 F.2d 427, 430 (8th Cir.1993) (quoting *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990), which in turn quotes *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994).

### 1. Facial Or Factual Challenge Pursuant To Rule 12(b)(1)

■ For the court to dismiss for lack of subject matter jurisdiction under *Fed.*

*R.Civ.P.* 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 731–32 (11th Cir. 1982)....
>
> If the [defendant] wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1010 n. 4, 91 L.Ed. 1209 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn [v. United States],* 918 F.2d [724,] 730 (citing *Crawford v. United States,* 796 F.2d 924, 928 (7th Cir.1986)).

*Id.* The Florida defendants have not requested such an evidentiary hearing, although they have submitted affidavits in support of their motion. Woodke has responded by submitting an affidavit affirming the factual allegations in his resistance to the motion to dismiss.

■ The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1). *Drevlow v. Lutheran Church, Missouri Synod,* 991 F.2d 468, 470 (8th Cir.1993). If material facts are adjudicated by the court in determining its jurisdiction, the appellate court will review the findings of fact for clear error. *Id.* Where the material facts are not in dispute, the appellate court will review the court's determination that it lacks jurisdiction de novo. *Id.* If the court considers matters outside of the pleadings, however, it may not, without notice to the parties, convert a motion to dismiss for lack of subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1) into

a motion to dismiss for failure to state a claim under *Fed.R.Civ.P.* 12(b)(6), which is subject to summary judgment disposition, because to do so would not allow the parties to respond to the issue the court is weighing for summary judgment. *Layton v. United States,* 919 F.2d 1333, 1334–35 (8th Cir. 1990).[4]

In *Osborn v. United States,* 918 F.2d 724 (8th Cir.1990), the Eighth Circuit Court of Appeals presented its most exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary.... [Citations omitted.]

The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson [v. Tucker],* 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied,*

454 U.S. 897[, 102 S.Ct. 396, 70 L.Ed.2d 212] (1981) ]. It is "elementary," the Fourth [sic] Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Osborn,* 918 F.2d at 729.

The *Osborn* court found the distinction between facial and factual attacks on the complaint under 12(b)(1) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), and *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). The court stated that

[i]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* 918 F.2d at 729 n. 6 (citations omitted).[5] A factual challenge to jurisdiction under 12(b)(1) is unique:

---

**4.** In *Layton,* the court noted that a 12(b)(1) motion is distinguishable from a 12(b)(6) motion on the ground that the Rules expressly provide that the latter is subject to conversion into a summary judgment motion, while no such provision exists for a 12(b)(1) motion. *Layton,* 919 F.2d at 1335. However, courts have approved such a conversion of a 12(b)(1) motion when appropriate. *Id.* (citing *Less v. Lurie,* 789 F.2d 624, 625 n. 1 (8th Cir.1986)). There is, however, an exception to the notice requirement before the court makes a conversion into a summary judgment motion articulated in *Van Leeuwen v. United States Postal Serv.,* 628 F.2d 1093, 1095 (8th Cir.1980), which requires that if both parties have submitted affi-

davits and exhibits outside the pleadings which they understand the district court has accepted for consideration, then the non-moving party has notice of the court's intention to treat the motion to dismiss as one for summary judgment. *Id.* (concluding that the court could not invoke the *Van Leeuwen* exception on the basis of a unilateral submission of exhibits by the moving party).

**5.** The standards for dismissal under Rule 12(b)(6) were recently restated in *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir.1994):

We must construe the allegations in the complaint in the light most favorable to [plaintiff],

[H]ere the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* at 730 (quoting *Mortensen,* 549 F.2d at 891). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, " 'any rational mode of inquiry will do.' " *Id.* (quoting *Crawford,* 796 F.2d at 929).

Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. [*Crawford,* 796 F.2d at 929.] The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id.*

*Id.*[6]

■ In the present case, the court concludes that DePew has made only a facial challenge to subject matter pursuant to *Fed. R.Civ.P.* 12(b)(1). Although DePew has not articulated the basis for his challenge, it ap-

pears to be an assertion that there is no basis for federal jurisdiction over this case. The court concludes that no adjudication of facts is necessary to address this challenge. Woodke has founded his assertion of federal jurisdiction on a federal question, specifically, unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The court will therefore restrict itself to the face of the pleadings, and afford Woodke as the non-moving party the same protections as it would a party defending against a motion brought under Rule 12(b)(6). *Osborn,* 918 F.2d at 729 n. 6. The general rule is that a complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (citations omitted).

### 2. A Cognizable Federal Claim

■ The question thus becomes whether Woodke has stated a claim cognizable under the Lanham Act sustaining federal question jurisdiction. The court concludes that Woodke has stated such a claim. The specific statute that Woodke alleges has been violated states as follows:

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as

---

see [*Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n,* 970 F.2d 421, 425 (8th Cir.1992) ], and should not approve dismissal of his complaint for failure to state a claim unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99[, 101–02,] 2 L.Ed.2d 80 (1957).

**6.** The procedure for disposing of a motion to dismiss for lack of subject matter jurisdiction on the basis of insufficient amount in controversy, for example, is that the sum claimed by the

plaintiff controls if it is apparently made in good faith; to justify dismissal, it must appear to a legal certainty that the claim is for less than the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Zunamon v. Brown,* 418 F.2d 883 (8th Cir.1969); *Hedberg v. State Farm Mut. Auto. Ins. Co.,* 350 F.2d 924 (8th Cir.1965). When a motion to dismiss for lack of subject matter jurisdiction brings into issue the value of the amount in controversy, the plaintiff bears the burden of establishing the jurisdictional requirement with "competent and preponderant proof." *Hedberg,* 350 F.2d at 929.

to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Traditionally, courts restricted claims for unfair competition under this section of the Lanham Act to situations where there was "passing off," which is the selling of a good of one's own creation under the name or mark of another. *Qualitex Co. v. Jacobson Prod. Co., Inc.,* 13 F.3d 1297, 1303 (9th Cir.) (citing *Smith v. Montoro,* 648 F.2d 602, 604 (9th Cir.1981), and identifying the "many different forms" unfair competition under 43(a) may now take, with citations), *cert. granted in part,* —— U.S. ——, 115 S.Ct. 40, 129 L.Ed.2d 935 (1994). "Express passing off occurs when an enterprise labels goods or services with a mark identical to that of another enterprise, or otherwise expressly misrepresents that the goods originated with another enterprise." *Id.* (quoting *Smith,* 648 F.2d at 604). More recently, courts have expanded a claim for unfair competition under section 43(a) to matters beyond "passing off" to "encompass any form of competition or selling which contravenes society's current concepts of 'fairness.'" *Id.* (quoting 2 McCarthy on Trademarks, 25:1, 233). *See also Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2753, 2763, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring) (discussing the broad reach of § 43(a) to fill a gap in unfair competition law).

Several courts have recognized claims of unfair competition similar to that made here as cognizable under § 43(a), 15 U.S.C. § 1125(a). The Eighth Circuit Court of Appeals has identified the offense alleged here as "reverse palming off":[7]

Reverse palming off is essentially the defendant's unauthorized removal of plaintiff's product's identifying marks before reselling the goods. *[Smith v.] Montoro,* 648 F.2d [602,] 605 [ (9th Cir.1981) ]; *Web Printing Controls Co. v. Oxy–Dry Corp.,* 906 F.2d 1202, 1203 n. 1 (7th Cir.1990). The doctrine includes situations in which a defendant markets another's product that has been only slightly modified and then relabeled. *See Roho, Inc. v. Marquis,* 902 F.2d 356, 359 (5th Cir.1990); *Arrow United Indus., Inc. v. Hugh Richards, Inc.,* 678 F.2d 410, 415 (2d Cir.1982).

*Pioneer Hi–Bred Int'l v. Holden Found. Seeds,* 35 F.3d 1226, 1241 (8th Cir.1994). For example, in *Pioneer Hi–Bred,* the court found that the defendant possessed the plaintiff's seed hybrid in a form designated as its own. *Id.* The Second Circuit Court of Appeals defined "reverse passing off" as a situation in which " 'A' sells 'B's' product under 'A's' name." *Waldman Publishing Corp. v. Landoll, Inc.,* 43 F.3d 775 (2d Cir.1994) (citing, *inter alia,* Restatement (Third) of Unfair Competition § 5 (Tent. Draft No. 1 1988)). That court noted that "[t]he typical reverse palming off case involves a manufactured product, rather than a written work," identifying as an example the case of *Arrow United Indus. v. Hugh Richards, Inc.,* 678 F.2d 410 (2d Cir.1982), in which the defendant used a product (an industrial damper) manufactured by the plaintiff, Arrow, reduced it slightly, affixed its own identifying marks, and represented to a customer that the product was its own. *Id.* at 412, 415. The court held that this activity constituted "affixing" a "false designation of origin" in violation of the Lanham Act. *Id.* at 415. The designation was false because Arrow was the true manufacturer of the product, and by affixing its name, Richards misappropriated Arrow's manufacturing talents. *Id.; see also Roho,* 902 F.2d at 359 ("[t]raditional and reverse palming off activities have both been recognized as wrongful because they involve attempts to misappropriate another's talents"). This was true

---

**7.** The court noted that "[c]ourts" have used the terms "reverse palming off" and "reverse passing off" interchangeably. *Pioneer Hi–Bred Int'l v. Holden Found. Seeds,* 35 F.3d 1226, 1241 n. 45

(8th Cir.1994) (comparing *Smith v. Montoro,* 648 F.2d 602, 605 (9th Cir.1981), with *Williams v. Curtiss–Wright Corp.,* 691 F.2d 168, 172 (3d Cir. 1982)).

even though Richards had modified the product slightly. *Arrow,* 678 F.2d at 415. *Waldman,* 43 F.3d at 780 (involving "bodily appropriation" of the appearance and "false designation of origin" of a written work). *See also Cleary v. News Corp.,* 30 F.3d 1255, 1260 (9th Cir.1994) ("Reversing palming off" in violation of § 43(a) of the Lanham Act includes mislabeling to mask the creator's contribution); *Serbin v. Ziebart Int'l Corp., Inc.,* 11 F.3d 1163 (3d Cir.1993) (considering § 43(a) claim as a form of false advertising); *Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, 1437–39 (9th Cir.1993) (further defining "express reverse palming off" as one party purchasing or otherwise obtaining the second party's goods, removing the second party's name, and then marketing the product under its own name); *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1106–09 (9th Cir.1992) (celebrity "sound alike" case under § 43(a) of Lanham Act analogous to "reverse palming off" case in which plaintiff's name had been removed from his appearance in a movie, citing *Montoro,* 648 F.2d at 606–07), *cert. denied,* —— U.S. ——, 113 S.Ct. 1047, 122 L.Ed.2d 355 (1993); *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1477 (9th Cir.) (in "reverse palming off" case based on § 43(a) in which defendant markets its copied product as its own, success on the claim is dependent on successful infringement claim), *cert. denied,* —— U.S. ——, 113 S.Ct. 198, 121 L.Ed.2d 141 (1992); *Web Printing Controls Co., Inc. v. Oxy–Dry Corp.,* 906 F.2d 1202, 1203 & n. 1 (7th Cir.1990) (citing the "ancient lineage" of "reverse passing off" claims in that circuit); *Shaw v. Lindheim,* 908 F.2d 531, 541–42 (9th Cir.1990) (copyright act provided adequate remedy for plaintiff where defendant had copied literary work and committed "reverse passing off" of the work as his own, precluding Lanham Act remedy under § 43(a)), *amended and superseded,* 919 F.2d 1353, 1364 (9th Cir.1990) (same); *Lamothe v. Atlantic Recording Corp.,* 847 F.2d 1403, 1406 (9th Cir.1988) (distinguishing between "express reverse passing off" as removal of trademark of another from the other's product, then selling it under a name chosen by the wrongdoer, and "implied reverse passing off" as removing or obliterating the name or source of the product then selling it in an unbranded state); *Halicki v. United Artists Communications, Inc.,* 812 F.2d 1213 (9th Cir.1987) (marketing a movie under an "R" rating when it had received a "PG" rating was analogous to "reverse palming off" in violation of § 43(a) of Lanham Act); *Litchfield v. Spielberg,* 736 F.2d 1352, 1358 (9th Cir.1984) (without substantial similarity of products there can be no claim of reverse passing off under § 43(a)), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985); *Williams v. Curtiss–Wright Corp.,* 691 F.2d 168, 172 (3d Cir.1982) (selling unused surplus parts of plaintiff under defendant's numbering system was reverse palming off); *U–Haul Int'l, Inc. v. Jartran, Inc.,* 681 F.2d 1159, 1161 (9th Cir. 1982) (considering distinctions among "palming off," "reverse palming off," and false advertising); *Smith v. Montoro,* 648 F.2d 602, 605 (9th Cir.1981) (identifying and defining "reverse passing off" as the economic equivalent of "passing off," and therefore prohibited by § 43(a)).

More nearly on point are cases in which defendants used photographs of the plaintiffs' products to sell them under their own name. In *Truck Equip. Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1213, 1221 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976), a farm equipment manufacturer used photographs of a competitor's grain trailer that had been labeled as its own product in sales literature. The court concluded that protecting the plaintiff against the misappropriation of the semi-trailer's exterior design, portions of which were nonfunctional, and possessed a secondary meaning uniquely associated with the plaintiff, would "be in furtherance of [the] Congressional purpose" behind § 43(a) of the Lanham Act to protect the quality of trademarked goods and to protect the public from deceit. *Id.* at 1215 (citing the legislative history of the Lanham Act, Senate Report No. 1333, 1949 U.S.Code Cong.Serv., p. 1275). The court also rejected the suggestion that using a photograph of the plaintiff's product in the defendant's sales literature was not a false representation because the defendant could deliver a product that was

not inferior in quality. *Id.* at 1215–16. The court held that the wrong was "[t]he use of another's product, misbranded to appear as that of the competitor," a wrong "repeatedly found to be 'a false designation of origin' actionable under § 43(a)." *Id.* at 1216. The court therefore concluded that "[t]he fact that the products are of equal quality is not of dispositional significance." *Id. But see Vibrant Sales, Inc. v. New Body Boutique, Inc.,* 652 F.2d 299, 305 (2d Cir.1981) (requiring that where defendant used a photograph of plaintiff's product to sell defendant's own product, a claim under § 43(a) would lie only where defendant could not ship exactly what defendant depicted in its advertisement, or where the casting depicted in the photograph is so distinctively associated with the plaintiff that it operates much in the manner of a trademark), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

In *Bangor Punta Operations, Inc. v. Universal Marine Co., Ltd.,* 543 F.2d 1107, 1109 (5th Cir.1976), the defendant represented a photograph of plaintiff's trawler to be the defendant's, thus misappropriating plaintiff's advertising materials by asserting them to be the defendant's. The court agreed that such conduct results in the violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Bangor,* 543 F.2d at 1109. More recently, one court has held that "it is well established that use of a photograph of a competitor's product to advertise and sell one's own product is false advertising and a violation of section 43(a)." *Potucek v. Taylor,* 738 F.Supp. 466, 469 (M.D.Fla.1990) (citing *Matsushita Electric Corp. of Am. v. Solar Sound Sys., Inc.,* 381 F.Supp. 64, 67 (S.D.N.Y.1974), and *Bangor,* 543 F.2d at 1107).

Another recent case reiterates that removing another's labels then selling or advertising the product as one's own is a cognizable claim under the Lanham Act, but indicates that extensive modification of the original product or incorporation of the product into a new creation does not state such a claim. In *Roho, Inc. v. Marquis,* 717 F.Supp. 1172 (E.D.La.1989), *injunction vacated,* 902 F.2d 356 (5th Cir.1990), the defendant allegedly removed plaintiff's trademarks, then sold the product as his own. *Roho,* 717 F.Supp. at 1174. The court wrote:

> The substance of Roho's allegations as to this statute is that Marquis engaged in "reverse palming off" or producing a product in such a way that the consuming public is led to believe they are obtaining a good or service that is the defendant's but actually is that of someone else. This type of activity, if proven that it is likely to cause confusion as to the product's origin is cognizable under the Lanham Act. *U–Haul International, Inc. v. Jartran, Inc.,* 681 F.2d 1159 (9th Cir.1982).

*Roho,* 717 F.Supp. at 1175. On appeal of the grant of an injunction by the district court, the Fifth Circuit Court of Appeals did not take issue with the conclusion that the activity described constituted a cognizable claim under the Lanham Act, but instead concluded that the situation actually presented was more complicated. *Roho, Inc. v. Marquis,* 902 F.2d 356, 359 (5th Cir.1990). The appellate court concluded that the situation "raise[d] certain analytic difficulties because this is not a traditional reverse palming off scenario," finding that the defendant had not simply removed plaintiff's trademarks, then sold the product as his own as the district court had concluded. *Id.* Rather, the appellate court concluded that very substantial modifications had been made, not merely inconsequential ones. *Id.* at 359–60. The court concluded that the product defendants ultimately sold

> [a]lthough ... made of Roho components, ... was actually created through Marquis' efforts. It is not a Roho product and, regardless of some similarity between the two mattresses, cannot be considered a relabeled Roho mattress. Marquis' conduct therefore cannot be characterized as reverse palming off.

*Id.* at 361.

In the present case, Woodke has alleged a claim of "reverse palming off" in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). He has alleged both that defendants used a photograph of his product, without making significant modifications to the product, in an advertisement in which they represented the product to be one of their

own, obscuring Woodke's trademarks, and also that his trailers are uniquely and distinctively associated with him. Because Woodke has a cognizable federal claim of "reverse palming off" in violation of the Lanham Act, this court has subject matter jurisdiction over this case.

### 3. Rule 12(b)(6) Challenge For Failure To State A Claim

Because the court has disposed of DePew's facial challenge to subject matter jurisdiction by applying the same standards applicable to a challenge for failure to state a claim under *Fed.R.Civ.P.* 12(b)(6), that is, by construing the allegations in the complaint in the light most favorable to the plaintiff and dismissing only if "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir.1994), the court concludes that DePew's motion to dismiss for failure to state a claim must also fail. The court must therefore consider whether it can properly exercise personal jurisdiction over the Florida defendants.

### B. Personal Jurisdiction

■■■■ Both Florida defendants have moved to dismiss for lack of personal jurisdiction, alleging that their contacts with Iowa at issue in this case are insufficient for this court to maintain personal jurisdiction over them. To defeat a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a *prima facie* showing of jurisdiction. *Dakota Indus., Inc. v. Ever Best Ltd.,* 28 F.3d 910, 914 (8th Cir.1994) (hereinafter *Ever Best*); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991) (hereinafter *Dakota Indus.*). Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Dakota Indus.,* 946 F.2d at 1387; *Fed.R.Civ.P.* 12(b)(2). If the court does not hold a hearing and instead relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the non-moving party and resolve all factual conflicts in favor of that party. *Id.; see also General Elec. Capital Corp. v. Grossman,* 991 F.2d 1376, 1387 (8th Cir.1993) (citing *Dakota Indus.*). At trial or at an evidentiary hearing, however, the plaintiff bears the burden of proving personal jurisdiction and this burden does not shift to the party challenging personal jurisdiction. *Newhard, Cook & Co. v. Inspired Life Ctrs, Inc.,* 895 F.2d 1226, 1228 (8th Cir.1990).

### 1. Minimum Contacts

■■■■ The court may exercise personal jurisdiction over a defendant where the defendant has sufficient minimum contacts with the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Bell Paper,* 22 F.3d at 818.

> Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Bell Paper,* 22 F.3d at 818 ("Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice."). Thus, the determination of whether minimum contacts exist is not "one in which [the] answers will be written in 'black and white.'" *Ever Best,* 28 F.3d at 915 (quoting *Bell Paper,* 22 F.3d at 820, in turn quoting *Kulko v. California Super. Ct.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978)).

■■■■ The court's analysis of the adequacy of the non-moving party's *prima facie* showing of personal jurisdiction requires that the court first examine whether the exercise of jurisdiction is proper under the forum state's long-arm authority, and then address whether the exercise of personal jurisdiction comports with due process. *Bell Paper,* 22 F.3d

at 818; *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 63, 126 L.Ed.2d 32 (1993); *Dakota Indus.*, 946 F.2d at 1387–88; *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir.1991); *Midland Forge, Inc. v. Letts Indus., Inc.*, 395 F.Supp. 506, 513 (N.D.Iowa 1975) (The exercise of personal jurisdiction must be based on the existence of a statute or rule authorizing the assertion of jurisdiction). When a state construes its long-arm statute or rule to confer jurisdiction to the fullest extent permitted by the due process clause, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process. *Bell Paper*, 22 F.3d at 818; *Soo Line R.R.*, 950 F.2d at 528.

 Clark and DePew concede that they were served pursuant to *Iowa R.Civ.P.* 56.2, which gives Iowa courts jurisdiction to the fullest constitutional extent. *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980). Therefore, the only relevant issue here is whether this court's exercise of personal jurisdiction over the Florida defendants is consistent with due process.

In *Dakota Indus.*, the Eighth Circuit Court of Appeals summarized these due process requirements:

> In a series of cases following *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court has elucidated the "minimum contacts" standard that must be satisfied before a nonresident can be subjected to the jurisdiction of a state's courts. Due process requires that out-of-state defendants have " 'fair warning' " that they could be "haled into" court in a foreign jurisdiction. This requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities.
>
> The contacts with the forum state must be more than " 'random,' " " 'fortuitous,' " or " 'attenuated.' " The due process clause forecloses personal jurisdiction unless the actions of the "defendant *himself* ... create[d] a 'substantial connection' with the forum State." Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether the assertion of jurisdiction comports with " 'fair play and substantial justice.' "

*Dakota Indus.*, 946 F.2d at 1389 (citations omitted); *see also Jarvis and Sons, Inc. v. Freeport Shipbuilding and Marine Repair, Inc.*, 966 F.2d 1247, 1249–50 (8th Cir.1992) (citing same standards); *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575–76 (8th Cir.) (citing same standards), *cert. denied*, —— U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992). In assessing the defendant's "reasonable anticipation" of being haled into court, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Bell Paper*, 22 F.3d at 818; *Soo Line R.R.*, 950 F.2d at 528–29.

 There are two broad types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Bell Paper*, 22 F.3d at 819.

> Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. [*Helicopteros*, 466 U.S.] at 414, 104 S.Ct. at 1872. General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Id.* at 415, 104 S.Ct. at 1872.

*Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.1993). Specific jurisdiction may not be exercised where none of the actions complained of occurred within or had any connection to the forum state. *Id.; see also Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872 (specific jurisdiction considers whether the cause of action asserted against the non-resident defendant "arises out of or relates to" the non-resident's contacts with the forum). The non-resident's contact with the forum may be based on contacts by its representative, because the Supreme Court has

194

held that "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a primary participant in the enterprise and has acted purposefully in directing those activities." *Bell Paper*, 22 F.3d at 820 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 n. 22, 105 S.Ct. 2174, 2185 n. 22, 85 L.Ed.2d 528 (1985)). For general jurisdiction to exist, the non-resident defendant must be engaged in "continuous and systematic general business contacts" within the forum. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1873.

■ The test for evaluating the propriety of jurisdiction under the due process clause requires the court to consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Bell Paper*, 22 F.3d at 818 (citing *Land–O–Nod Co.*); *Gould*, 957 F.2d at 576 (citing *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977)); *Dakota Indus.*, 946 F.2d at 1390 (citing *Land–O–Nod Co.*); *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338 (8th Cir.1983). Of these factors, the first three are the most important. *Dakota Indus.*, 946 F.2d at 1390.

More specifically, the Eighth Circuit Court of Appeals has concluded that a defendant has insufficient contact with the forum state where the defendant has no office or agent or representative or employees in the forum state, does not do business in the forum state, *Jarvis and Sons v. Freeport Shipbuilding*, 966 F.2d 1247, 1250 (8th Cir.1992), has no bank accounts or property in the forum, does not advertise or solicit any business in the state, and does not design products for use in the state. *Gould*, 957 F.2d at 576. The record in this case shows that the Florida defendants do not have any of these traditional contacts with Iowa. The affidavits of Joseph B. Clark, on behalf of Clark, and of DePew demonstrate that neither of the Florida defendants has any offices or employees in Iowa, neither has any real or personal

property or bank accounts in Iowa, and neither has advertised or solicited business in Iowa.

Woodke points to visits by and correspondence from DePew, as a representative of Clark, to Iowa which Woodke asserts were to conduct business with Woodke and Cornbelt. Woodke also points to substantial correspondence and telephone calls from the Florida defendants to him at his place of business in Iowa. Finally, Woodke points to execution of a dealership agreement with Clark in Iowa, and subsequent delivery of trailers for Clark to be taken at Early, Iowa. The Florida defendants dispute factual matters concerning the visits, specifically their purpose and number, but the court must look at the facts in the light most favorable to Woodke as the non-moving party and resolve all factual conflicts in favor of Woodke. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991). Although courts have held that visits to the forum are insufficient to support personal jurisdiction if they are too few in number and too slight in quality, *see Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir.1992) (defendant's two-day trip to forum to examine plaintiff's facilities and subsequent telephone and mail communications insufficient contact); *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1279 (8th Cir.1991) (defendant's employees' three trips to forum insufficient contact), and correspondence between the Florida defendants and Woodke alone does not establish sufficient minimum contacts, *see, e.g., Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir.1992) (defendant's telephone and mail communications to plaintiff insufficient contact); *FDIC v. Malmo*, 939 F.2d 535, 537 (8th Cir.1991) ("sporadic mail correspondence alone usually does not constitute 'minimum contacts'"), the court concludes that there has been a consistent series of business contacts and visits by Clark through its representatives, specifically DePew, to Woodke and Cornbelt in this forum for the purpose of conducting the business among them to sustain personal jurisdiction here as to both Florida defendants. Furthermore, taking the facts in the light most favorable to Woodke's *prima facie* showing of jurisdiction, Clark availed itself of

the laws of this forum by entering into a dealership agreement executed in this state. Finally, the business relationship among the parties resulted in a series of transactions with delivery of products to be made at Cornbelt's plant in Early, Iowa.[8]

Although it is perhaps a close question, the court concludes that the contacts of the Florida defendants with this forum have been more than "'random,'" "'fortuitous,'" or "'attenuated.'" Rather, the consistency of contacts over a period of several years has "create[d] a 'substantial connection' with the forum State," and therefore the assertion of jurisdiction in this case on the basis of the contacts alleged would comport with "fair play and substantial justice." *Dakota Indus.*, 946 F.2d at 1389 (citations omitted).

### 2. The "Effects Test" For Personal Jurisdiction

■ Woodke's assertion of jurisdiction can also be read as claiming that the Florida defendants' contacts with this forum are sufficient because the Florida defendants purposefully directed a foreign act having an effect in this forum. Specifically, Woodke alleges that the intentional and tortious actions of the Florida defendants, in concert with the Iowa defendants, in entering into a conspiracy to destroy his business had a devastating effect on him in Iowa. Also, Woodke asserts that injury to his trademark and business reputation as the result of unfair competition outside the state will also have a devastating effect upon him in Iowa. In *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the United States Supreme Court approved an "effects" test that allows the assertion of personal jurisdiction over non-resident defendants whose acts "are performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus.*, 946 F.2d at 1390-91 (quoting *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989)).

The Eighth Circuit Court of Appeals has applied and refined the "effects" test formulated in *Calder* in some recent opinions. In relying on *Calder*, the court does not abandon the five-part test of personal jurisdiction in *Land–O–Nod* and *Aaron Ferer & Sons* applied above. *Dakota Indus.*, 946 F.2d at 1391. Rather, *Calder* requires the consideration of additional factors when an intentional tort is alleged. *Id.* In *Dakota Indus.*, the center of the court's focus in applying the "effects" test was whether the allegedly wrongful act was directly aimed at the plaintiff and the plaintiff's activities in the forum state. *Id.* (seeking to determine where the "brunt" of the injuries occurred).

Subsequently, the Eighth Circuit Court of Appeals noted that the holding in *Calder* was supported by more than "mere effects"; rather, the *Calder* Court "found that Calder *intentionally aimed his tortious action at [the forum state]* and could, therefore, have "reasonably anticipate[d] being haled into court there." *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (citing *Calder*, in turn quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); emphasis added). In *Hicklin*, the Eighth Circuit Court of Appeals found that the defendant had not aimed any of the allegedly wrongful acts at the forum state of Iowa and therefore held *Calder* was inapposite. *Id.*

In *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376 (8th Cir.1993), the plaintiff argued that "under the principles of 'specific jurisdiction,' the purposeful direction of even one false statement or omission into a forum is sufficient to warrant the exercise of personal jurisdiction there for claims arising from that conduct." *Id.* at 1387. However, the court found that the "focal point" of the alleged wrongdoing and harm occurred outside the forum where the company that was the subject of the litigation was located, where the auditing and accounting functions of that company were located, and where the buyer of that company purchased the compa-

---

8. The court is not persuaded by the Florida defendants' argument that delivery in Early, Iowa, was made into the hands of the ultimate buyer, and not to the dealership. The fact remains that, whoever actually collected the trailers in Early, Iowa, the dealership entered into a contract that required them to take delivery, *i.e.*, perform part of the contract, in Iowa. How the defendants arranged to perform that part of the contract is not relevant to this inquiry.

ny and conducted most of the related negotiations. *Id.*

In the present case, the court finds that *Calder* can be read broadly enough to allow this court to assert personal jurisdiction over the Florida defendants. The court finds that Woodke's allegations, if true, would establish harm to him in Iowa, and concludes that Woodke has at least generated a genuine issue of material fact as to whether Iowa was the "focal point" of the alleged wrongdoing and harm for his *state law claims.* One court has recently held that impairment of trademarks means that the injury is felt mainly in the district in which the owner of the trademark resides, thus establishing personal jurisdiction under the *Calder* "effects" test in the jurisdiction where the plaintiff resides. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership,* 34 F.3d 410, 411–12 (7th Cir.1994). The "effects" test therefore provides another ground for finding personal jurisdiction over the Florida defendants in this case. The "effects" test does not replace the "minimum contacts" test of personal jurisdiction, *Dakota Indus.,* 946 F.2d at 1391, but the court has already determined that on the basis of "minimum contacts," this court has personal jurisdiction over the Florida defendants.

### C. Venue

█ The court's conclusion that Woodke has made a *prima facie* showing of personal jurisdiction over the Florida defendants does not dispose of the present motions to dismiss, however. The Florida defendants have also moved to dismiss on the ground that Iowa is an *improper* forum, not merely an inconvenient one. In its simplest form, the argument of these defendants is that venue is not proper for all the same reasons that there is no personal jurisdiction. The court agrees that in most situations if personal jurisdiction does not exist, then venue also does not exist.[9] Jurisdiction and venue are separate questions, however, *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 760 F.2d 312, 315 (D.C.Cir.1985) ("A plaintiff who establishes jurisdiction over the defendant's person must *additionally* meet venue specifications" in case under the Lanham Act), and the venue issue here is more complicated than the personal jurisdiction question. The Florida defendants also assert that any wrongful acts occurred outside of the state of Iowa, presumably arguing that venue in this district is therefore improper because this is not a district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" as required by 28 U.S.C. § 1391(b)(2). In their supplemental brief on venue the Florida defendants have argued that courts have consistently held that venue in a Lanham Act case lies where the "passing off" occurred, and that any alleged "passing off" in this case occurred outside of Iowa.

Although in his complaint Woodke identified only 28 U.S.C. § 1391(b)(3) as the basis of venue in this case, he now argues that venue is proper on any of the three bases stated in § 1391(b).[10] Woodke's arguments,

---

9. The converse is not necessarily true. It would be possible for a court to find that any one of the three bases for venue in 28 U.S.C. § 1391(b) existed in a specific case, but that the court nonetheless could not obtain personal jurisdiction over a particular defendant. When the Eighth Circuit Court of Appeals stated that "[i]f personal jurisdiction exists at the commencement of the action, then venue is proper under 28 U.S.C. § 1391(b) (1988)," *Dakota Indus.,* 946 F.2d at 1392, it was referring to the situation prior to the amendment to § 1391(b) in 1990, and was also discussing a case that only involved *corporate* defendants, such that the operation of § 1391(c) meant that the question of venue under § 1391(b)(1) and the question of personal jurisdiction were the same.

10. The venue statute Woodke cites, *28 U.S.C. § 1391(b),* states as follows:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

It is plain to the court, that Woodke cannot present a colorable argument that venue is proper under § 1391(b)(1), because all of the defendants do not reside in this state. Woodke appears to argue that, on the basis of § 1391(c),

however, focus on the propriety of venue under § 1391(b)(2). Woodke argues that the proper standard to determine venue under 28 U.S.C. § 1391(b)(2), like the standard for venue under 28 U.S.C. § 1391(a)(2), which is stated in identical terms, is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts," citing *Setco Enter. Corp. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir.1994). Woodke argues that although another district may also be a proper venue, Iowa is a forum with "substantial connections" to his claims, and the court does not decide venue on the basis of the "best" forum. In his supplemental brief on venue, Woodke argues that under either a rule that venue in a Lanham Act case lies where the "passing off" occurred or a rule that looks instead at where the injury is felt, venue is proper in Iowa. Woodke argues that the "roots" of any scheme to "pass off" his trailers as defendants' were in Iowa, because that is where any plan to do so was hatched and where the goods were prepared. Furthermore, he asserts that he will sustain injury from the "passing off" in Iowa.

As an initial matter, the court agrees that a substantial part of the events giving rise to Woodke's *state law claims* may have occurred in Iowa. However, jurisdiction in this matter is founded on a federal question of unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125. Whatever the equities may be in favor of maintaining the state law action in an Iowa forum, and the court accepts that they are substantial, the question here is whether venue is proper in Iowa for the only *federal* claim at issue. A specific body of case law has developed around venue questions in cases under the Lanham Act.

Clark *resides* in Iowa because it is subject to personal jurisdiction here. Such an argument does not apply to DePew, however, because De-Pew is not a "defendant that is a corporation" as required by § 1391(c). Similarly, the court has been unable to locate any argument by Woodke that venue is proper under § 1391(b)(3), which is applicable when "there is no other district in which the action may otherwise be brought" and the district in question is one in which "any

### 1. Venue In Lanham Act Cases

■ The Lanham Act does not contain a venue statute. Therefore, the proper venue for an action under the Lanham Act must be determined by reference to the general venue statute for non-diversity actions, which is 28 U.S.C. § 1391. Section 1391 was amended in 1990 by the Judicial Improvements Act of 1990. *Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994) (considering the effect of this amendment for venue in an action under the Lanham Act). The report of the Federal Courts Study Committee pointed out that the reference to the district "in which the claim arose" in the prior version of § 1391(b) had led to wasteful litigation whenever several different fora were involved in the transactions leading up to the dispute. *Id.*

> The amendment changed pre-existing law to the extent that the earlier version had encouraged an approach that a claim could generally arise in only one venue. However, the current statutory language still favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be "substantial." Events or omissions that might only have some tangential connection with the dispute in litigation are not enough. Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.

*Id.* Thus, the United States Supreme Court's decision in *LeRoy v. Great W. United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), retains its former authority for its statement that "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." 443 U.S. at 183–84, 99 S.Ct. at 2716. In light of the amend-

defendant may be found." Woodke could have brought his Lanham Act unfair competition action in any district in which the unfair competition occurred, or any district in which any of the defendants may be found. Florida is such a district, for example, because the Florida defendants reside there, do business there, and the allegedly tortious advertisement in the "Southeastern Truck Paper" was circulated there.

ment to § 1391, the Third Circuit Court of Appeals stated that

> [a]lthough the statute no longer requires a court to select the "best" forum, *Setco Enters. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir.1994), the weighing of "substantial" may at times seem to take on that flavor.

*Cottman,* 36 F.3d at 294. In the Lanham Act litigation before it, therefore, the *Cottman* court followed the traditional rule in trademark cases that "a cause of action for trademark infringement arises where the passing off occurs." *Id.* (citing *Indianapolis Colts v. Metro. Baltimore Football Club,* 34 F.3d 410, 412 (7th Cir.1994), 4 J. Thomas McCarthy, *McCarthy on Trademarks and Intellectual Property* § 32.22(3)(b)(iii) (3d ed. 1994), and *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.1956)). The *Cottman* court reasoned that

> [u]nder *Tefal[, S.A. v. Products Int'l Co.,* 529 F.2d 495, 497 (3d Cir.1976)], if the infringement of a registered trademark occurred solely within one district, then only in that district would venue be proper. By the same token, however, if the infringement occurred in other districts as well, then venue could be proper in more than one district. *Tefal,* 529 F.2d at 497. The 1990 amendment to the venue statute did not necessarily shift the judicial focus away from the place of infringement for establishing proper venue in Lanham Act cases.

*Id.* 36 F.3d at 294–95. The court therefore held venue was proper only in the Eastern District of Pennsylvania as that district was the only one in which passing off occurred, rather than in the district where the plaintiff resided or had originally prepared or initiated its trademark. *Id.* at 296. The reason for the rule is presumably that where the "passing off" occurred is where consumers were confused by the unfair competition, and

hence where the injury occurred. *See Qualitex,* 13 F.3d at 1297 ("The basic test for unfair competition is whether consumer confusion or deception is likely as a result of the defendant's acts," citing *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 (9th Cir.1988)).

■ The *Cottman* court is not alone in recognizing the vitality of the rule that venue lies where the "passing off" occurred, even where the court considers other issues such as convenience of the parties. *See, e.g., Dakota Indus.,* 946 F.2d at 1388–89 (finding that "passing off" in state sustained personal jurisdiction as well as venue);[11] *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 760 F.2d 312, 317 (D.C.Cir.1985) (stating rule, but finding that where two districts are places where "passing off" occurred, choice of forum that is "barely plausible" in light of convenience will not be sustained on the basis that passing off occurred there); *Tefal,* 529 F.2d at 497 (not reaching the contention that the only question for venue in Lanham Act case is where passing off occurred because the court found that venue had been laid in district in which infringing sales occurred and defendant did substantial business); *Sega Enter. Ltd. v. MAPHIA,* 857 F.Supp. 679, 686 (N.D.Cal.1994) (venue proper where infringement occurred without further comment); *Eastman Kodak Co. v. Photaz Imports Ltd., Inc.,* 853 F.Supp. 667, 679 (W.D.N.Y.1993) (finding venue proper where infringement occurred and denying transfer because of insufficient showing of inconvenience), *aff'd,* 28 F.3d 102 (2d Cir.1994); *Radical Products, Inc. v. Sundays Distrib.,* 821 F.Supp. 648, 649–50 (W.D.Wash.1992) (citing *Sidco, infra,* for the proposition that venue was proper in either of two districts in which infringement occurred); *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott, Ltd.,* 807

---

11. Woodke argues that in *Dakota Industries,* the Eighth Circuit Court of Appeals recognized the validity of both the test for venue based on where the passing off occurs and the test based on where the injury is felt. This court reads the decision differently. Although the *Dakota Industries* court acknowledged that one district court and one circuit court had found venue would be proper where the owner suffers the economic impact, citing *Acrison, Inc. v. Control & Metering, Ltd.,* 730 F.Supp. 1445, 1448 (N.D.Ill.1990), and

*Horne v. Adolphe Coors Co.,* 684 F.2d 255, 259 (3d Cir.1982) (patent case), the Eighth Circuit Court of Appeals concluded that it need not address these decisions departing from the general rule, because it found sales, and thus "passing off," had occurred in the chosen forum, as well as economic injury there. *Dakota Indus.,* 946 F.2d at 1388–89. Thus, the court accepted and applied the general rule, but found that even under the rare variant rule, the chosen forum was the proper venue.

F.Supp. 470, 474 (N.D.Ill.1992) (having concluded that venue in either of two districts was proper because infringement occurred in both, court then considered convenience issues to determine proper venue); *NLC, Inc. v. LENCO Electronics, Inc.*, 798 F.Supp. 1419, 1423 (E.D.Mo.1992) (holding without comment that venue in a trademark infringement case is proper where infringement occurred); *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.*, 779 F.Supp. 335, 338 (S.D.N.Y.1991) (early case after amendment to § 1391, finding that venue for trademark infringement was proper where defendant had sold infringing items); *Heinz v. Frank Lloyd Wright Found.*, 773 F.Supp. 1219, 1222 (W.D.Wis.1991) (using "balance of convenience" to distinguish which among several possible venues was proper when trademark infringement had occurred in several districts, but without mention of the "passing off" test for possible venues); *Sidco Indus., Inc. v. Wimar Tahoe Corp.*, 768 F.Supp. 1343, 1346–47 (D.Or.1991) (among the earliest Lanham Act cases after amendment to § 1391, and reiterating the "passing off" rule for venue); *but see John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 405–06 (7th Cir.1987) (stating the rule, but finding that it did not identify the "only" means of determining appropriate venue; rather, the court relied on the convenience of the *defendant,* place in which witnesses and evidence could be found, and ready accessibility of trial location to both parties, to hold that venue was proper in a district where no "passing off" occurred.). Acknowledging that relatively few courts had interpreted the meaning of "substantial part" in the amended version of § 1391 as applied to a trademark case, the court in *French Transit, Ltd. v. Modern Coupon Sys. Inc.*, 858 F.Supp. 22, 26 (S.D.N.Y.1994), considered where the infringement occurred *and* where its effects might be felt, but restricted the meaning of "where effects might be felt" as depending on "whether there is a strong likelihood that Plaintiff's customers in this District would be confused by the [D]efendant's acts." Thus, the court's language, which appears to consider the harm to plaintiff as a consideration in a venue choice for a Lanham Act cause·of action, was specifically restricted to define

the relevant harm as "passing off." The court concludes that the proper rule for determining venue in a case brought under the Lanham Act is where the passing off occurred.

### 2. *Venue In This Case*

■ In the present case, the record shows that no allegedly offending sales occurred in Iowa, and that the allegedly offending advertisement was not distributed here. The cases cited above therefore suggest that Iowa is not a proper venue for Woodke's Lanham Act claim.

Woodke argues, however, that in *Indianapolis Colts,* the court found venue on the basis of where the injury was felt, upholding venue in a district where no passing off had occurred. *Indianapolis Colts, Inc.,* 34 F.3d at 411–12. Yet, the court in *Indianapolis Colts* found that the defendants had "entered" the state with their broadcasts advertising the offending product in the chosen forum, the largest concentration of fans likely to be confused by those advertisements was in the chosen forum, and it was only a matter of time before the defendants would actually be selling their product in the chosen forum. *Indianapolis Colts, Inc.,* 34 F.3d at 412. Furthermore, the court was only considering the propriety of venue on appeal from the grant of a preliminary injunction. *Id.* at 411. Thus, the court had to consider only the *likelihood* of offending sales in its venue analysis. The decision in *Indianapolis Colts* does not provide a sufficient basis for applying an alternative to the "where passing off occurred" rule.

Woodke's next argument is that the roots of the "reverse passing off" were in Iowa, therefore venue is proper in Iowa under the "where passing off occurs" rule. The court finds, however, that courts have defined where "passing off" or "palming off" occurs in such a way as to answer Woodke's argument. "Passing off" or "palming off" occurs at the point of sale or where consumers are subjected to advertisement of the product that might confuse them, because that is where purchasers are misled by the offending practice, not where any other aspect of the scheme was planned or where prepara-

tion of the product occurred. *See, e.g., Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.) (passing off occurs where the customer buys a product from one company in the mistaken belief the product was that of another company, "not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages."), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Nine Point Mesa of Nashville, Inc. v. Nine Point Mesa of Lexington, Inc.,* 769 F.Supp. 259, 261 n. 1 (M.D.Tenn.1991) (palming off occurs where the selling of infringing products occurs; buying supplies and materials does not relate to the defendants' alleged illegal conduct that confused the public); *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 374 F.Supp. 184 (D.Del.1974) (passing off occurs in any state in which the infringing advertising occurs); *Heritage House Frame and Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc.,* 88 F.R.D. 172, 173 (D.C.N.Y.1980) (passing off is where goods are sold, not where deceptive labels are affixed to goods or where the goods are wrapped in misleading packages, citing *Vanity Fair Mills* ).

The court concludes, first, that even in cases where pendant state-law claims are attached to a cause of action under the Lanham Act, it is where "a substantial part" of the events giving rise to the Lanham Act claim occurred that is a proper venue. *See, e.g., Cottman,* 36 F.3d at 292 (although state-law claims were also alleged, court examined only where a substantial part of the events giving rise to the federal Lanham Act claim occurred to determine venue); *Habitat,* 807 F.Supp. at 472 (same, and transferring action from Illinois to Massachusetts even though state-law claims were under Illinois law); *Sidco,* 768 F.Supp. at 1344 (same, and retaining venue in Oregon solely on the basis of venue for the federal question and not on the basis of claims under Oregon state law). Second, the rule for venue in a trademark infringement case based on where the "passing off" occurred is equally applicable to a "reverse palming off" or "reverse passing off" claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). For both kinds of claims, the venue issues are the same: where were consumers confused by the defendant's

acts? Iowa is not that forum in this case, because no sales of the offending merchandise occurred here, and no advertisement of the offending product ever "entered" this forum. Thus, consumers in Iowa were not confused by the defendants' conduct. Therefore, in this case, because none of the "reverse passing off" occurred here, venue in this district is not proper.

The court must address Woodke's assertion that the "where passing off occurred" rule for venue will require him to pursue his Lanham Act claim in each of the federal fora in which reverse passing off did occur. The court does not believe that is the result of application of the rule. Rather, any forum in which passing off occurred is a proper forum, and, as Woodke has argued, the question is no longer which forum is the "best," only which of several possible venues is proper. *Setco Enter. Corp.,* 19 F.3d at 1281. If Woodke brings his federal claim in any one proper forum, he can then argue the convenience of that forum in preference to any other proper forum. Furthermore, the fact that multiple venues may be proper does not change the fact that Iowa is not one of those venues. The court does not believe the specter of duplicative litigation in several federal fora is a realistic concern. Even if it were, it would not be for this court to prevent multiple litigation in several fora, because this court is simply not one of the possible venues for Woodke's federal claim.

As a final matter, nothing in this court's decision precludes Woodke from pursuing his state-law claims in Iowa state court, even should he find he must pursue federal claims in one or more other fora. Thus, Woodke has an alternative that meets his concerns for convenience and availability of evidence as to his *state law claims.* This court cannot be concerned with those issues, because its subject matter jurisdiction and propriety of venue relate only to Woodke's *federal* claim.

### III. CONCLUSION

The court concludes that Woodke has stated a cognizable claim under the Lanham Act over which this court has subject matter jurisdiction. Specifically, Woodke has stated a claim of "reverse passing off," or selling of

his trailers as those of the defendants, in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125. Thus, the Florida defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted should be denied.

Although it is perhaps a close question, the court concludes that Woodke has made out a *prima facie* showing of personal jurisdiction over the Florida defendants. These defendants have sufficient minimum contacts with this forum for the court to exercise personal jurisdiction over them. The Florida defendants carried on a business relationship with Woodke over several years on the basis of a agreement reached in Iowa to be performed at least in part in Iowa. Furthermore, the court concludes that the effect of the defendants' conduct outside of Iowa would be felt primarily in Iowa, thus providing a further basis for finding personal jurisdiction in this case. However, the court notes that nearly all of the contacts and equities that support personal jurisdiction in this case pertain to Woodke's *state law* claims. The critical question here is whether this court is the proper venue for Woodke's *federal* claim.

The court finds that, almost without exception, courts have held that venue in a case under the Lanham Act lies where the "passing off" or "reverse passing off" occurred, *i.e.*, where consumers were confused, where sales occurred or advertisements were aired, but not where goods were prepared or activities in furtherance of the "passing off" took place or were planned. In the present case, no "passing off" or "reverse passing off" occurred in Iowa, thus Iowa cannot be a proper forum, even if there may be several proper fora. Therefore, although the motion to dismiss should be denied on the grounds of lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted, it must be granted on the ground of improper venue, and Woodke's complaint in this matter is dismissed.

**IT IS SO ORDERED.**